### McCOMB v. AIBEL et al.
#### Civ. No. 10470.

United States District Court
E. D. New York.

Oct. 23, 1951.

William S. Tyson, Sol., Washington, D. C., John A. Hughes, Regional Atty., Henry J. Easton, Associate Atty., New York City, U. S. Dept. of Labor, for plaintiff.

Silver & Bernstein, George H. Kaplan, New York City, for defendants.

GALSTON, District Judge.

There are two motions to be disposed of, made by the plaintiff, for summary judg-ment and to vacate a notice for taking depositions.

The action seeks to enjoin the defendants from violating the provisions of sections 15(a)(1) and 15(a)(5) of the Fair Labor Standards Act of 1938, U.S.C.A., Title 29, § 201 et seq. It is alleged that the defend-ants are co-partners, doing business under the trade name French Textile Company, and own and control a place of business and manufacturing plant for the production of hair nets at 110 Fifth Avenue, and a branch plant located at 229 East 109th Street, both in the Borough of Manhattan and State of New York. The defendants, so the com-plaint alleges, employed and are employing employees including homeworkers, and it is the claim of the plaintiff that the home-workers are employees of the defendants within the meaning of the Act, especially section 3(e) and (g) thereof. It appears from the complaint that the Administrator of the Wage and Hour Division of the United States Department of Labor, pur-suant to authority conferred upon him un-der section 11(c),. issued regulations pre-scribing the records of persons employed, and of wages, hours and other conditions, to be made and preserved by the employer, subject to the provisions of the Act. These regulations were published in the Federal Register, and are known as Title 29, Chap-ter V, of Federal Regulations, Part 516.

The plaintiff complains that since Feb-ruary 13, 1943 the defendants repeatedly have violated and are violating sections of the Act in that they have failed to keep records of their employees, including home-workers. The Administrator, on April 4, 1942, effective April 20, 1942, as amended May 5, 1943, effective May 12, 1943, issued regulations, sections 617.3, Part 617, Title 29, Chapter V, Code of Regulations, which regulations provided as follows:

"No work in the knitted outerwear in-dustry, as defined in sec. 617.5 and sec. 617.6, shall be done in or about a home, apartment, tenement, or room in a resi-dential establishment after November 30, 1942, except by such persons as have ob-tained special home work certificates is-sued pursuant to applicable regulations of

the Wage and Hour Division, authorizing industrial home work by a worker who:

"(a) (1) Is unable to adjust to factory work because of age or physical or mental disability; or

"(2) Is unable to leave home because his presence is required to care for an invalid in the home; and

"(b) (1) Was engaged in industrial home work in the industry, as defined prior to August 20, 1941 (except that if this requirement shall result in unusual hardship to the individual home worker it shall not be applied); or

"(2) Is at any time engaged in such industrial home work under the supervision of a State vocational rehabilitation agency or of a sheltered work shop as defined in sec. 525.1 of this chapter."

Also on April 4, 1942, Regulations, Part 617.100 et seq., Title 29, Chapter V, Code of Federal Regulations, effective December 1, 1942, provided for the issuance of certificates for homeworkers in the knitted outerwear industry, and for the submission by the employer of records in respect to such house workers at stated semi-annual intervals.

Plaintiff complains that defendants have violated these regulations, and have permitted many of their homeworkers to do work in the production of goods for interstate commerce without having obtained homework certificates.

In consequence the plaintiff demands a permanent injunction restraining the defendants from violating the provisions of the Act.

The answer sets up substantial denials of alleged violations of the Act.

In support of its motion the plaintiff has submitted an affidavit by Abraham Klainbard, who, as an Inspector and Investigator employed by the Wage and Hour Division, was assigned in February, 1947 to make an investigation of the French Textile Company, the trade name and style under which the defendants are doing business. The Klainbard affidavit states that the period of time covered by the investigation was from February 13, 1943 to March 8, 1947. The affidavit indicates that the defendants en-

gage, as co-partners, and under the trade name and style of French Textile Company, in the manufacture of hair nets. The knitted fabric from which the hair nets are made was purchased from a French Textile Co., Inc., a New York corporation, the stock of which is wholly owned by the defendants and their three children. According to the affidavit, the defendants own 52% of the stock in this corporation.

Klainbard avers that he interviewed the employees of the defendants, including their homeworkers, and that he ascertained that none of the homeworkers thus interviewed had special homework certificates authorizing their employment in the house. He says that a corporation known as French Textile Co., Inc. shares with the defendants an office at 110 Fifth Avenue, New York City. The co-partnership, i. e. the defendants, maintains a branch office at 229 East 109th Street, New York City, which is used for distribution of work to the homeworkers. The hair net fabric—as distinguished from the hair nets—was knitted by the corporation. He admits that what he claims to be an insignificant portion of this product is sold by the corporation to various manufacturers and other users. After receipt of the hair net fabric from the corporation, the defendants' employees cut it into suitable lengths for the making of individual hair nets. These cut lengths are then transported to the 109th Street branch of the defendants. The homeworkers manufacture these fabric lengths of hair net into the finished product, and the finished product is then taken to the Fifth Avenue address and then shipped to defendants' customers. Klainbard found that the defendants failed to maintain adequate records of the wages, hours and other conditions of employment as required by the regulations.

However, the opposing affidavit of Samuel H. Aibel, one of the defendants, submitted in opposition to the motion for summary judgment, raises issues of fact. This affidavit states: "The hair nets are manufactured at East 109th Street by the defendant partnership. The defendants neither directly nor indirectly do any other business at this establishment. The de-

fendant partnership does its shipping and billing of hair nets from 110 Fifth Avenue, and does substantially nothing else in its hair net business but shipping and billing at 110 Fifth Avenue. The defendant partnership performs no knitting process at any time, at any place, in any establishment. * * * *The actual fact is that, if anything, it is an insignificant portion of the production of the corporation which is eventually sold to the defendant partnership for the production of hair nets. * * The hair net manufacturing is at a different physical establishment or location than where the corporation does the knitting. The manufacturers of the hair nets are a partnership consisting of the two defendants. The knitters are a corporation of different ownership. * * * The partnership and the corporation are not only different legal entities but consist of different people. The functions of management and control and operation are separate and distinct and different. The two organizations deal in different sources and end products. * * *"*

Aibel also contradicts allegations made in respect to failure to keep records. He says: "This contention is completely unfounded in fact. In the first place, since the defendants are not subject to the Wage and Hour Division Order referred to, they are not required to keep any records. * * Even assuming, however, that upon trial the (plaintiff) * * * should be able to overcome the first issue, the fact still remains that since early in 1947 the defendants have not even been in possible violation of the record keeping requirements. * * * When Mr. Klainbard made his investigation * * * over four and one-half years ago, he said that certain records should be kept. Since that time we have kept complete records and data. * * *"

The knitted outerwear industry is defined in the regulations as follows: "The knitting from any yarn or mixture of yarns and the further manufacturing, dyeing or other finishing of knitted garments, knitted garment sections, or knitted garment accessories for use as external apparel or covering which are partially or completely manufactured in the same establishment as that where the knitting process is performed; * * *" 29 CFR 617.5.

The defendants contend that since they do not manufacture goods "partially or completely manufactured in the same establishment as that where the knitting process is performed" they are not required to obtain the special certificates for their homeworkers.

On the other hand, the plaintiff takes the position that the partnership firm of French Textile Company, and the corporation French Textile Co., Inc., are an "integrated business" in the control of the defendants, so that the two can be regarded as "the same establishment" within the meaning of the order of the Administrator.

We reach them an issue in dispute, for though Klainbard avers that the corporation was engaged almost exclusively in knitting the hair net fabric required by the defendants, the defendants contend that the major part of the corporation's product is sold to other customers than the defendants.

It is not disputed that the knitting is done by the corporation, though the manufacturing process is performed by the partnership firm. Nor is it disputed that the homeworkers here are employees of the partnership and not of the corporation. Moreover, there is no showing of any contractual relationship wherein the partnership has agreed to manufacture the knitted fabric into the finished product for the corporation as "the concern performing the knitting".

The conflict in respect to whether the corporation has a substantial business in its own right is of material importance, and raises a material issue. In Nichols & Co. v. Secretary of Agriculture, 1 Cir., 1942, 131 F.2d 651, 1942, rehearing on other grounds, 1 Cir., 136 F.2d 503, in setting aside an order of the Secretary of Agriculture suspending the registration of a partnership as commission merchant under the provisions of the Commodity Exchange Act, 7 U.S.C.A. § 1 et seq., the court held that the Secretary was not justified in attributing the wrongs of a corporation

to the partnership, although there was an identity of individuals who controlled the corporation and partnership, and it appeared that the partnership and corporation were on the same floor in the building, that the corporation had granted loans to the partnership, and that the partnership handled the corporation's futures business, where it appeared that the major portion of the partnership's business was done with others than the corporation, and that the partnership carried on a substantial business in its own right as a separate, distinct entity. The court, 131 F.2d at page 657, stated:

"The courts will not destroy the corporate entity merely because there is an identity of control in the parent and subsidiary corporations. * * *

"It may be that for certain purposes a parent and a subsidiary may be treated as separate entities and yet a court would be justified in looking behind the corporate set up to determine whether for the purpose of administering and enforcing a statute involving a public purpose, it is necessary to treat both the corporation and the subsidiary as one. But even in such cases the courts are hesitant to destroy the corporate separateness * * * when there is no evidence of evasion or where it is clear that both * * * have a legitimate separate existence. Press Co., Inc., v. National Labor Relations Board, 1940, 73 App. D.C. 103, 118 F.2d 937, certiorari denied 313 U.S. 595, 61 S.Ct. 1118, 85 L.Ed. 1548; * * * *".

 In the instant case the undisputed facts set forth by the defendants, and upon which they rely, fall short of the "compelling reasons" which the court in the Nichols & Co. case thought necessary to justify the court in looking behind the formal separateness of the two businesses.

This issue, as to whether the corporation conducts a substantial and separate business of its own, is material in determining whether the two enterprises can be regarded as the "same establishment" within the meaning of the Fair Labor Standards Act and the pertinent regulations. So too it must be recognized that when injunctive relief is sought, the court should proceed cautiously before summarily precluding the defendant, Lipson v. Interstate Home Equipment Co., D.C., 57 F.Supp. 955; and Woods v. Wallace, D.C., 8 F.R.D. 140.

With respect to the alleged violations of the record-keeping requirements, the Fair Labor Standards Act of 1938 requires such records of employers "subject to any provisions" of the Act, 29 U.S.C.A. § 211(c). In order, therefore, to find any violations it must first be determined that the defendants are subject to the Act, and more specifically, to the provisions relating to the knitted outerwear industry.

 In respect to plaintiff's motion to vacate defendants' notice for the taking of depositions, the plaintiff objects to the notice as it applies to William R. McComb, the Administrator of the Wage and Hour Division and Public Contracts Division of the Department of Labor, to Arthur J. White, formerly Regional Director of the Wage and Hour and Public Contracts Divisions, to Marion Goodman, exemptions examiner for the New York Regional Office and to John A. Hughes, Regional Attorney for the Department of Labor. The defendants have agreed to waive the depositions of William R. McComb and of Arthur J. White. As to Mr. Hughes, the plaintiff states: "It is obvious that any information which Mr. Hughes may have concerning this action has been obtained in the course of his relationship as attorney for the Department of Labor and would be privileged." (Affidavit of Henry J. Easton, attached to the motion papers.)

 As to Miss Goodman, it appears from the affidavits that she processed applications for special homework certificates for persons employed by the defendants. It may be that matters within her knowledge would be material or relevant to the controversy.

 The defendants request that the notice to take depositions "be deemed modified" to include Abraham Klainbard. The plaintiff admits that Klainbard has "adequate first-hand knowledge of the case". (Reply affidavit of Henry J. Easton).

In view of the foregoing, the plaintiff's motion for summary judgment is denied. Furthermore, the motion of plaintiff to vacate the notice of taking depositions is granted but only so far as it relates to William R. McComb, Arthur J. White and John A. Hughes. The defendants' request to add the name of Abraham Klainbard to the notice is granted. Settle orders on notice.