Richard R. SATTERWHITE, Jr., for himself and in behalf of all other persons similarly situated, Plaintiffs-Appellants,

v.

UNITED PARCEL SERVICE, INC., an Ohio corporation, Defendant-Appellee.

No. 73-1166.

United States Court of Appeals, Tenth Circuit.

Argued Aug. 14, 1973.

Decided May 3, 1974.

Philip Hornbein, Jr., Denver, Colo. (Roy O. Goldin, Denver, Colo., on the brief), for plaintiffs-appellants.

Peter H. Holme, Jr., Denver, Colo. (Holme, Roberts & Owen, and Thomas A. Richardson, Denver, Colo., on the brief), for defendant-appellee.

Before BARNES,* BREITENSTEIN and BARRETT, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The issue here is whether an employee's right to sue under § 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), for overtime compensation claimed under § 7(a)(1), 29 U.S.C. § 207(a)(1), is foreclosed by prior submission of his claim to final arbitration under the grievance procedure of a collective-bargaining agreement. The trial court granted judgment to the employer. We affirm.

The facts are not in dispute. Plaintiff-appellant Satterwhite sued for himself and others similarly situated. Fifty-eight other employees of defendant-appellee have filed their written consents to become parties plaintiff in accordance with § 16(b). Plaintiffs are members of Delivery Drivers, Warehousemen and Helpers, Local Union No. 435, which has a collective-bargaining agreement with the employer. The period involved is December 29, 1970, to September 15, 1971, the date of expiration of the pertinent labor contract. The cause of the controversy was the

* Senior Judge, United States Court of Appeals, Ninth Circuit, sitting by designation.

elimination by employer of two 15-minute coffee breaks for which there had previously been no deduction in pay. Employer claimed the right to eliminate the coffee breaks because the labor contract did not cover that subject.

The labor contract has a three-step grievance procedure culminating in compulsory arbitration. A grievance is defined as "a dispute, misunderstanding, or controversy involving the interpretation, construction, intent, or meaning of this Agreement" with exceptions which are not pertinent. The arbitration award is binding and conclusive unless beyond the jurisdiction fixed by the contract. No claim is made here that the award exceeded the jurisdictional grant.

The labor contract provides for compensation at 1 and ½ times the straight hourly rate for time worked in excess of 40 hours per week or 8 hours per day, each exclusive of lunch periods. The employees filed a grievance claiming pay for the extra ½ hour a day of work, or 2 and ½ hours per week, resulting from the elimination of the two 15-minute coffee breaks. The matter was not settled in the first two grievance steps and the union demanded arbitration.

The company asserted that the controversy was not arbitrable because the labor contract did not cover coffee breaks. The union then sued in the United States District Court for the District of Colorado for specific performance of the arbitration clause. The court gave summary judgment to the union and ordered the company to arbitrate.

The controversy was then submitted to an arbitrator who, in a comprehensive written opinion, held that the company could not unilaterally eliminate the paid coffee breaks and that the employees were entitled to ½ hour pay for each day worked during the pertinent period. The union and the company then executed and presented to the arbitrator a written joint request for a supplemental decision on whether the award should be paid at straight time or at time and ½. The arbitrator, in a carefully considered written opinion, held that payment should be at straight time. It is reasonable to infer that the arbitrator compromised by giving the employees all the time which they sought while deciding the rate of pay in favor of the company. The award was paid and the employees have received what was due to them thereunder.

This suit was then brought under FLSA § 16(b) to recover time and ½ for work in excess of 40 hours per week. FLSA § 7(a)(1) provides for pay at 1 and ½ times the straight rate for work in excess of 40 hours per week. This differs from the arbitration award which gave the employees a straight rate extra ½ hour pay for each day worked. The company pleaded the arbitration award as a defense.

On the authority of Alexander v. Gardner-Denver Company, 10 Cir., 466 F.2d 1209, the district court held that the arbitration award was final and dispositive. Judgment was entered dismissing the action. During the pendency of the instant appeal, the Supreme Court reversed Gardner-Denver. 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147.

In Gardner-Denver an employee's claim of racial discrimination had been submitted to arbitration in accordance with a collective-bargaining agreement. Prior to the arbitration hearing the employee filed a charge of racial discrimination with the Colorado Civil Rights Commission which referred the complaint to the federal Equal Employment Opportunity Commission. The arbitrator ruled that the employee had been discharged for just cause and made no reference to the discrimination claim. Thereafter EEOC determined that there was not reasonable cause to believe that a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., had occurred. The employee then filed suit in federal court asserting a violation of the Act. See 42 U.S.C. § 2000e–2(a)(1).

In Gardner-Denver the Supreme Court was concerned with Title VII of the Civ-

il Rights Act. We are concerned with the Fair Labor Standards Act. The employees here read Gardner-Denver as holding that the arbitration of a contract right is no defense to judicial determination of a statutory right and, hence, they may maintain and secure their statutory right by federal court suit. Gardner-Denver dealt with racial discrimination. The dispute here is over the rate of pay for overtime.

Gardner-Denver recognizes the federal policy favoring arbitration of labor disputes and reviews the pertinent decisions. See 94 S.Ct. at 1018 and particularly n. 6. The Court summarized its decision thus, Ibid.:

> "For the reasons stated in Parts III, IV, and V of this opinion, we hold that the federal policy favoring arbitration does not establish that an arbitrator's resolution of a contractual claim is dispositive of a statutory claim under Title VII."

Our problem is whether such an award is dispositive of a statutory claim under FLSA.

Gardner-Denver says that the legislative history of Title VII manifests a congressional intent to allow an individual to pursue rights under both Title VII and other applicable state and federal statutes. Accordingly, Title VII supplements rather than supplants existing laws and institutions relating to employment discrimination. 94 S.Ct. at 1019–1020. The doctrine of election of remedies is held inapplicable in a situation involving statutory rights distinctly separable from contract rights even though the violation of both rights may have resulted from the same factual occurrence. Ibid. at 1020–1021. Resort to arbitration does not waive the Title VII cause of action because the statutory rights conferred cannot be prospectively waived and they form no part of the collective-bargaining process. Ibid. at 1021–1022. The Court comments that an arbitrator's authority is confined to the resolution of questions of contractual rights, regardless of whether they resemble or duplicate Title VII rights. Ibid. at 1022. The Court rejects the ar-

gument that to permit an employee to have recourse to both arbitral and judicial forums is unfair to the employer, stating that by a Title VII action an employee is asserting a statutory right independent of the arbitration process and such right simply is not given by statute to the employer. Ibid. at 1022–1023. The Court also says that a policy of deferral by federal courts to arbitral decisions would not comport with the congressional objective that federal courts should exercise the final responsibility for enforcement of Title VII. Ibid. at 1023–1025.

The acceptance of the Court's analysis and reasoning in Gardner-Denver does not solve our problem unless we equate the wages and hours provisions of FLSA with the anti-discrimination provisions of Title VII. Strong national policy is expressed both in Title VII, 94 S.Ct. at 1019, and in FLSA, see 29 U.S.C. § 202, and Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 706–707, 65 S.Ct. 895, 89 L.Ed. 1296. These policies, each in its turn, should be balanced against the federal policy favoring arbitration of labor disputes.

In a number of respects FLSA is importantly different from Title VII. Gardner-Denver refers to the significant role of private individuals in the enforcement of Title VII rights. 94 S.Ct. at 1018. In Employees etc. v. Department of Public Health and Welfare of Missouri, 411 U.S. 279, 286, 93 S.Ct. 1614, 1618, 36 L.Ed.2d 251, the Court said that, "* * * private enforcement of the [FLSA] was not a paramount objective * * *." The independent statutory remedies in Title VII evince an intent to accord parallel or overlapping relief apart from contractual processes. The absence of such procedures in FLSA suggests a greater reliance on contract remedies and a lesser emphasis on individual enforcement.

Additionally, the Portal-to-Portal Act of 1947, 29 U.S.C. § 251 et seq., resulted from congressional dissatisfaction with judicial interpretation of FLSA. See 29 U.S.C. § 251(a). It established the defense of good faith reli-

ance on administrative regulations, 29 U.S.C. § 259(a), and declared the congressional policy "to protect the right of collective bargaining and \* \* \* limit the jurisdiction of the courts." 29 U.S.C. § 251(b). The unavailability of the good faith defense in the case at bar is not pertinent. The point is that in certain circumstances good faith is a defense to an FLSA action. The defense, however, is not available in Title VII actions. See Griggs v. Duke Power Co., 401 U.S. 424, 432, 91 S.Ct. 849, 28 L.Ed.2d 158, and Jones v. Lee Way Motor Freight, Inc., 10 Cir., 431 F.2d 245, 250, cert. denied, 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237. The Portal-to-Portal Act speaks to the protection of collective bargaining. Gardner-Denver says that, 94 S.Ct. at 1019, "Title VII does not speak expressly to the relationship between federal courts and the grievance-arbitration machinery of collective-bargaining agreements." The different approach to the defense of good faith and the different emphasis on collective bargaining indicates that Congress intended that wage disputes and racial disputes should not receive the same treatment.

Wages and hours are at the heart of the collective-bargaining process. They are more akin to collective rights than to individual rights, and are more suitable to the arbitral process than Title VII rights. Gardner-Denver says, 94 S.Ct. at 1024, that "the specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land," and that "judicial construction has proven especially necessary with respect to Title VII, whose broad language frequently can be given meaning only by reference to public law concepts." We are concerned with rate of pay, an issue which does not require, or lend itself to, public law considerations. The added fear expressed in Gardner-Denver that harmony between a union and an individual cannot be presumed "where a claim of racial discrimination is made," 94 S.Ct. at 1024 n. 19, has no pertinence here. One of the highest objectives of any union is to get all the money possible for all of its members.

Significantly, 58 other employees have joined as plaintiffs.

In Gardner-Denver the Court reasserted the federal policy favoring arbitration of labor disputes. 94 S.Ct. at 1018–1019 and particularly n. 6. This policy was offset against that established by the Civil Rights Act of 1964. Citing Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263, the Court said that in the Civil Rights Act "Congress indicated that it considered the policy against discrimination · to be of the 'highest priority.'" The conclusion that the anti-discrimination policy rated higher than that favoring arbitration of labor disputes was determinative. We find nothing in any pertinent legislative history or court decision to indicate that Congress, by the grant of a right to private suit under FLSA § 16(b), intended to establish a policy preference for the determination of a wage dispute in judicial rather than arbitral proceedings. Indeed, the only policy expression of which we are aware, that contained in the Portal-to-Portal Act, 29 U.S.C. § 251(b), is to the contrary.

Industrial peace is important not only to employees and employers but also to the public. The delineation of the respective rights of employees and employers in collective-bargaining contracts has helped to secure industrial peace. Many of those contracts contain provisions which define as contract rights the same rights as are granted by federal statutes. Indeed, the wage provisions of FLSA may not be waived by agreement. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 707, 65 S.Ct. 895, 89 L.Ed. 1296. In many contracts the unions have foregone the right to strike and management has accepted compulsory arbitration. See Boys Markets, Inc. v. Retail Clerks Union, 398 U.S. 235, 247–248, 90 S.Ct. 1583, 26 L.Ed.2d 199. The ever-present disputes over wages and hours are readily adaptable to arbitration. Resort to judicial process after arbitration prolongs the controversy and serves no good purpose when the arbitral and judicial proceedings arise out

of, and must be decided on, the same factual background.

We hold that when a wage dispute is submitted to arbitration in accordance with a collective-bargaining agreement, the employees may not thereafter maintain an FLSA § 16(b) suit for recovery on the basis of the same factual occurrence as that presented to the arbitrator. We are convinced that the policy of Congress, recognized by the Courts, favors the arbitration of disputes over wages and hours in accordance with a collective-bargaining agreement. The high priority which Congress has given to protection against racial discrimination has no application to a dispute over rate of pay. The reassertion in a judicial forum of the same wage claim determined in an appropriate arbitration hinders rather than promotes industrial peace, and should not be permitted.

Affirmed. Each party shall bear his own costs.