UNION de TRONQUISTAS de PUERTO RICO, LOCAL 901, et al., **Plaintiffs-Appellants,**

v.

**FLAGSHIP HOTEL CORPORATION, d/b/a Hotel Americana, et al., Defendants-Appellees.**

No. 76–1403.

United States Court of Appeals, First Circuit.

Argued Feb. 9, 1977.

Decided May 6, 1977.

David Rive Rivera, Hato Rey, P. R., with whom Calderon, Rosa-Silva & Vargas Hato Rey, P. R., was on brief, for plaintiffs-appellants.

Jorge L. Martinez, Santurce, P. R., with whom Goldman, Antonetti, Barreto, Curbelo & Davila, Santurce, P. R., was on brief, for defendants-appellees.

Before COFFIN, Chief Judge, VAN OOSTERHOUT,* and INGRAHAM,** Senior Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

This is an action brought by Local 901 of the Union de Tronquistas de Puerto Rico (Teamsters) against the Flagship Hotel Corporation d/b/a Hotel Americana seeking a declaration that a labor arbitration award is null and void.[1] The district court dismissed the complaint on the ground that the arbitration award is entitled to enforcement. We affirm.

## I.

Ultimately at issue in this case is the amount of pay to which croupiers and doormen represented by the plaintiff union and employed by the defendant company are entitled for each day of absence from work on account of sickness or vacation. The union contends that they are entitled to eight hours' pay; the company contends they are entitled to seven hours' pay.

The collective bargaining agreement between the parties provides that the normal work day for the croupiers and doormen shall consist of seven hours, with daily overtime at double the normal wage rate for all hours worked in excess of seven. In contrast, all other workers covered by the agreement have a more customary normal work day of eight hours, with daily overtime at double the normal wage rate for all hours worked in excess of eight. The agreement also contains provision for annual and sick leave for all employees. Although it does specify that some workers are entitled to eight hours' pay for each day of annual and sick leave, it does not specify how much croupiers and doormen are entitled to for each day of annual and sick leave.

Despite the fact that croupiers and doormen work seven-hour days, the union contends that they are entitled to eight hours' pay for each day of annual and sick leave. This contention is based on Mandatory Decree No. 46 (Fourth Revision) of the Minimum Wage Board of Puerto Rico,[2] effective November 27, 1969, and applicable to the hotel industry. Articles VI and VII of this decree respectively provide:

The salary corresponding to each day of annual leave shall be ·computed by multiplying by eight (8) the highest regular hourly rate received by the employee . . . during the last ninety (90) hours of the month corresponding to the taking of the vacation leave.

The salary corresponding to each day of sick leave shall be computed by multiplying by eight (8) the highest regular hourly rate entitled to by the employee at the moment of sickness. . . .

Prior to the instigation of any lawsuit, and without seeking a clarification from the Minimum Wage Board or any other administrative body, the parties submitted the dispute to arbitration. Specifically, the arbitrator was asked to decide:

If in accordance with Mandatory Decree No. 46 (Fourth Revision) of the Minimum Wage Board of Puerto Rico, the collective

---

* Of the Eighth Circuit, sitting by designation.

** Of the Fifth Circuit, sitting by designation.

1. Suit was originally brought in the Superior Court of the Commonwealth of Puerto Rico, San Juan Part, and was subsequently removed to the United States District Court for the District of Puerto Rico pursuant to 28 U.S.C. §§ 1441 et seq. In suits of this nature original jurisdiction is vested in the district courts by Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, and the

removal was accordingly proper. Avco Corp. v. Aero Lodge 735, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968).

2. Mandatory Decree No. 46 was revised a fifth time effective February 26, 1973. We have not been furnished with a copy of the fifth revision. The parties are in agreement that only the fourth revision has any relevance to this case, and all references in this opinion to Mandatory Decree No. 46 are to the fourth revision thereof.

bargaining agreement between the parties effective December 6, 1969 through November 30, 1972, and the evidence pertinent to the controversy to be admitted into evidence, the pay for each day of annual and sick leave for which the croupiers and doormen are entitled to and covered by said collective bargaining agreement, shall be computed by multiplying the corresponding wage hour by 7, or multiplying by 8.

On April 28, 1972, the arbitrator conducted a hearing at which both documentary and testimonial evidence was presented. On March 6, 1974, the arbitrator ruled that the pay for each day of annual and sick leave to which the croupiers and doormen were entitled should be computed by multiplying the hourly wage by seven.

The union subsequently brought this action to set aside the arbitration award.

## II.

■ The arbitrator in this case ruled that neither the collective bargaining agreement nor Mandatory Decree No. 46 entitled the croupiers and doormen to the compensation sought by the union. Insofar as the arbitrator's decision rested upon a construction of the collective bargaining agreement, judicial review of the merits of his determination is unquestionably inappropriate, see the *Steelworkers* trilogy [3], and the union does not argue to the contrary. It is not entirely clear, however, that judicial redetermination of the arbitrator's interpretation of the mandatory decree should similarly be foreclosed, since the underlying issue is one of law rather than one of contract application and interpretation.

The Supreme Court has recently made clear that the reasoning of the *Steelworkers* trilogy cannot be unflinchingly applied when arbitrators purport to decide disputes over questions of law. In *Alexander v.*

*Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Court held that an employee's statutory right to a trial *de novo* under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, was not foreclosed by prior submission of his claim to final arbitration under the nondiscrimination clause of a collective bargaining agreement.

The holding in *Gardner-Denver* rests in part on the "highest priority" policy against discrimination which Congress expressed in Title VII, *id.* at 47, 94 S.Ct. 1011, and in part on a view that the special role of an arbitrator is to effectuate the intent of the parties rather than the requirements of enacted legislation, *id.* at 56–57, 94 S.Ct. 1011. Each of these considerations is an integral part of the Court's rationale, and the opinion is thoroughly imbued with both an elaboration upon the purpose and structure of Title VII and a discussion of the limitations inherent in the arbitral process. The Court concludes "that the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII." *Id.* at 59–60, 94 S.Ct. at 1025.

■ We deal here, of course, not with a federal statute, but with an administrative regulation of the Commonwealth of Puerto Rico, and it is not at all clear that the premises underlying and the reasoning of *Gardner-Denver* are applicable here. Nevertheless, this case does not require that we examine all the difficulties which would be caused by such an extension of *Gardner-Denver*. Rather, we begin our analysis by assuming, solely for the purpose of deciding the issue now before us, that Mandatory

---

3. *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). "[S]o far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. at 599, 80 S.Ct. at 1362.

Decree No. 46 insofar as applicable to this case is compatible with the purposes of federal labor law [4] and, further, that it is entitled to the same kind of "accommodation" with federal labor policy as Title VII was accorded in *Gardner-Denver*. We express no opinion whatsoever on the legitimacy of these assumptions. So assuming, then, we hold that the federal policy favoring arbitration of labor disputes and the Commonwealth's minimum wage policy as expressed in Mandatory Decree No. 46 are best accommodated by resolving that the arbitration award here at issue is final and binding.

We have severe doubts, in the first instance, as to the substantiality, or indeed even the reasonableness, of the policies which would be served by Mandatory Decree No. 46 under the construction urged by the union. Under the ruling by the arbitrator, the employees here involved received the same daily pay for vacation and sick leave that they would have received had they worked a normal seven-hour day as provided for in the agreement. Any additional compensation obviously would be an inducement not to work. The policy behind such a result is questionable to such an extent that it causes doubt both whether the Puerto Rican Minimum Wage Board intended that result [5] and, even if it did, whether it had legitimate statutory authority from the Puerto Rican legislature to dictate that result.[6] These questions need not be fully explored, however, in this or any other court, since even a cursory view of the situation here demonstrates quite forcefully that the policies at stake here are a far cry from the policies at stake in *Gardner-Denver*.

By virtue of the minimal policy interests involved here, this case presents a considerably more compelling argument for affirmance than was presented in *Satterwhite v. United Parcel Service, Inc.,* 496 F.2d 448 (10th Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974). In *Satterwhite* the Tenth Circuit, distinguishing *Gardner-Denver,* held that an employee's right to sue for overtime compensation under §§ 7(a)(1) and 16(b) of the Fair Labor Standards Act, 29 U.S.C. §§ 207(a)(1) and 216(b), respectively, was foreclosed by prior submission of his claim to final arbitration under the grievance procedure of a collective bargaining agreement. In our opinion, *Satterwhite* was correctly decided and is *a fortiori* controlling here.

Specifically at issue in *Satterwhite* was a dispute over the elimination by the employer of two fifteen-minute coffee breaks for which there had previously been no deduction in pay. The dispute had been submitted to arbitration, and the arbitrator had decided that the employee was entitled to straight-time compensation for the additional time worked, but that the employee was not entitled to time-and-a-half overtime. Suit was subsequently brought by the employee contending that time-and-a-half was mandated under the Fair Labor Standards Act. The district court held for the employer on the basis of the arbitration award, and the Tenth Circuit affirmed.

The *Satterwhite* court carefully and ably distinguished the Fair Labor Standards Act from Title VII of the Civil Rights Act of 1964 in light of the considerations announced in *Gardner-Denver*. The court observed, *id.* at 451:

4. See *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 457, 77 S.Ct. 912, 923, 1 L.Ed.2d 972 (1957). The assumption might well be incorrect, *see especially Teamsters Union v. Oliver,* 358 U.S. 283, 79 S.Ct. 297, 3 L.Ed.2d 312 (1959), but since this point was neither briefed nor argued by the parties, and since we have little difficulty affirming the judgment below on the grounds which were briefed and argued by the parties, we have no occasion to explore further whether Mandatory Decree No. 46 is in this case preempted altogether by federal law.

5. The normal work day for most hotel employees is eight hours. The Puerto Rican Minimum Wage Board likely had this fact in mind when it promulgated Mandatory Decree No. 46, and it likely did not take into consideration the fact that some employees only worked seven hours a day.

6. The union does not contend that the arbitrator's award conflicts in any way with any Puerto Rican or federal statute.

Wages and hours are at the heart of the collective-bargaining process. They are more akin to collective rights than to individual rights, and are more suitable to the arbitral process than Title VII rights. *Gardner-Denver* says, [415 U.S. at 57], 94 S.Ct. at 1024, that "the specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land," and that "judicial construction has proven especially necessary with respect to Title VII, whose broad language frequently can be given meaning only by reference to public law concepts." We are concerned with rate of pay, an issue which does not require, or lend itself to, public law considerations. The added fear expressed in *Gardner-Denver* that harmony between a union and an individual cannot be presumed "where a claim of racial discrimination is made," [415 U.S. at 58 n. 19,] 94 S.Ct. at 1024 . . . ., has no pertinence here. One of the highest objectives of any union is to get all the money possible for all of its members.

The court elaborated, *id.* at 451–52:

Resort to judicial process after arbitration prolongs the controversy and serves no good purpose when the arbitral and judicial proceedings arise out of, and must be decided on, the same factual background.

\* \* \* \* \* \*

We are convinced that the policy of Congress, recognized by the Courts, favors the arbitration of disputes over wages and hours in accordance with a collective-bargaining agreement. The high priority which Congress has given to protection against racial discrimination has no application to a dispute over rate of pay. The reassertion in a judicial forum of the same wage claim determined in an appropriate arbitration hinders rather than promotes industrial peace, and should not be permitted.

We are fully persuaded by this reasoning and are more than convinced that a Puerto Rico administrative regulation of dubious policy value can fare no better than a federal statute, on a similar subject, of unquestioned policy value.

The district court properly deferred to the arbitration award in this case.

*Affirmed.*