**Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**COACH HOUSE RESTAURANT, INC., a corporation, and Leon Lianides, Individually and as President, Defendants.**

**No. 77 Civ. 3297–CSH.**

United States District Court, S. D. New York.

Oct. 2, 1978.

Francis V. LaRuffa, Regional Sol., U.S. Dept. of Labor, New York City, for plaintiff; Carin Ann Clauss, Washington, D.C., of counsel.

Aberman & Greene and Louis Charles Fink, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This motion for summary judgment, pursuant to Rule 56, Fed.R.Civ.P., raises an unsettled question of law under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201 *et seq.* Before addressing the legal issue involved, a brief

1. Fair Labor Standards Act of 1938 ("FLSA"), §§ 7, 15(a)(2), as amended, 29 U.S.C. §§ 207, 215(a)(2).

2. *Id.* §§ 11(c), 15(a)(5), as amended, 29 U.S.C. §§ 211(c), 215(a)(5). Regulations issued pursuant to 29 U.S.C. § 211 may be found at 29 C.F.R. 516.

3. The collective bargaining agreement contained a broad arbitration clause which provided in pertinent part:
   "8. GRIEVANCE AND ARBITRATION PROCEDURE
   "A. All complaints, disputes or grievances whatsoever of whatever kind or nature arising between the Union and the Employer concerning any provision of the contract, or with respect to any other act, conduct, relation or term or condition of employment, or otherwise, between the parties, directly or indirectly, shall be submitted for arbitration to HERBERT A. LeGRANGE, 261 Broadway, New York, N. Y. 10007, who shall hereafter be known as the arbitrator. The arbitration shall be brought on by a written notice sent by the party requesting the same, addressed to the other party at the address set forth in

review of the facts, undisputed for the purpose of this motion, is appropriate.

I.

During the period of October 1976 through December 1976, an employee of the Wage and Hour Division, Employment Standards Administration, of the United States Department of Labor, conducted an investigation of the defendant, Coach House Restaurant, the asserted purpose of which was to make a routine check for compliance with FLSA. This investigation allegedly unearthed violations of the overtime compensation provisions [1] and record keeping requirements [2] of FLSA.

Shortly after the conclusion of the Department's investigation, the union representing defendants' employees filed a grievance with respect to defendants' payment of overtime wages, thereby triggering the arbitration machinery of the collective bargaining agreement between the workers and the restaurant.[3] The issues to be arbitrated were stipulated as follows:

"Has the Employer made proper overtime payments to its employees under the collective bargaining agreement between the parties *and under any applicable*

this agreement. . . . The decision of the arbitrator shall be final and binding upon the parties and the employees and shall conclusively determine the matter and there shall be no appeal from said decision, and it shall have the effect of a judgment entered upon an award in a court of competent jurisdiction. . . . Service in the manner herein provided shall be sufficient to confer jurisdiction upon the arbitrator to render his award and sufficient for a court of competent jurisdiction to confirm the award and enter judgment thereon. The arbitrator is empowered to include in his award mandatory and injunctive relief and to determine the appropriate measure of damages. . . .
   "B. The procedure for arbitration is the sole and exclusive remedy of the parties, and such procedure shall be in lieu of any and all other remedies, forums at law, in equity or otherwise.
   "C. The maintenance of industrial stability requires the establishment and cooperative use of the grievance and arbitration machinery for the settlement of all grievances and disputes."

*wage and hour law*? If not, what shall the remedy be?" [4]

After the parties had "presented their respective cases in full" the arbitrator found "[f]rom all of the evidence adduced at the hearing and from an examination of payroll records" that the employer had paid more than the minimum wage for forty hours per week and more than time and one-half for work in excess of forty hours per week.[5] The following award was rendered:

> "The Coachhouse Restaurant Inc. has made proper overtime payments to its employees under the Collective Bargaining Agreement and under applicable wage and hour requirements from January 1, 1974 to [March 29, 1977]." [6]

Subsequent to the arbitral award, the Secretary of Labor filed the instant complaint on July 7, 1977, charging the defendants, *inter alia*,[7] with violations of sections 7 and 15(a)(2) of FLSA, 29 U.S.C. §§ 207, 215(a)(2), to wit: failure to pay the statutorily required overtime compensation. The Secretary seeks injunctive relief under section 17 of FLSA, 29 U.S.C. § 217, restraining defendants from withholding such payments. Defendants on this motion assert that, as a matter of law, the Secretary is precluded from raising the issue of overtime payments since it was previously re-

solved by final and binding arbitration between the defendant and the employees' union. The Secretary contends that there is a disputed issue of fact as to whether he, his designees or attorneys, were ever "vouched in" to the arbitration proceeding. For the purposes of this discussion, however, the Court will assume that the Secretary neither received notice of the arbitration, nor actually participated or consented to be represented in that proceeding.[8]

## II.

Before examining what little precedent is available on the issue raised, it is helpful to have some understanding of the scheme of FLSA. In pertinent part, FLSA mandates payment of certain overtime compensation to covered employees, 29 U.S.C. § 207 (see note 4, *supra*), and creates a cause of action in favor of aggrieved employees to recover from their employer any unpaid overtime and an additional equal amount as liquidated damages. FLSA § 16(b), 29 U.S.C. § 216(b). Suit may be brought "in any Federal or State court of competent jurisdiction . . ." *Id.* The Secretary of Labor is given a corresponding right to maintain an action on behalf of the employees to recover such unpaid overtime. *Id.* § 16(c), 29 U.S.C. § 216(c). Additionally, the Secretary alone is authorized to insti-

---

4. Decision and Award of Leon Reich, Arbitrator, In the Matter of the Arbitration between Local 1115, Joint Bd. Culinary Employees Div. and the Coach House Restaurant, Inc. *(No. 77–302 March 29, 1977) at 2 (emphasis added).*

It should be noted that the employer's contractual undertaking with respect to overtime compensation coincided exactly with its statutory duty under FLSA. Section 9 of the collective bargaining agreement provided: "All hours worked in excess of eight (8) hours in any one day or forty (40) hours in any week shall be paid for at the rate of time and one-half the regular hourly rate of pay." Section 7 of FLSA provides: "[N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

5. *Decision and Award, supra* note 4, at 2–3.

6. *Id.* at 3. The period of time encompassed by the arbitrator's decision included the time span that had been under investigation by the Department of Labor.

7. The claim respecting defendants' alleged violation of FLSA record-keeping provisions, 29 U.S.C. §§ 211(c), 215(a)(5), and pertinent regulations, 29 C.F.R. 516, is treated at part VI of this opinion, *infra*.

8. Defendants' motion papers do not contest plaintiff's assertion on this point. And had the Secretary participated in the arbitration, a compelling argument could be made that principles of *res judicata* or collateral estoppel would *prevent reassertion of a claim previously* resolved, albeit through arbitration, in a second proceeding between the same parties. *See United Elec. Radio Wkrs. v. Honeywell Inc.*, 522 F.2d 1221 (7th Cir. 1975); *James L. Saphier Agency, Inc. v. Green*, 293 F.2d 769 (2d Cir. 1961).

tute an injunctive proceeding in federal district court to restrain "any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under [FLSA]." *Id.* §§ 17, 11(a), 29 U.S.C. §§ 217, 211(a). The employees' right to sue directly under section 16(b) terminates when and if the Secretary elects to file a complaint under either section 16(c) or section 17. *Id.* § 16(b), (c), 29 U.S.C. § 216(b), (c).

### III.

■ Turning now to the question of the preclusive effect of an arbitral award, the first precedent to be addressed is the Supreme Court's decision in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). *Gardner-Denver* held that the submission to arbitration of a racial discrimination claim does not preclude that claim in a subsequent lawsuit by the employee under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* If that holding is applicable to a wage claim such as is at issue here, then defendants' motion must be denied. If the employee is not foreclosed from litigating his wage claim by the prior arbitration to which he was a party, then, *a fortiori*, the Secretary of Labor, who was not a party to the arbitration, is not precluded from raising the issue anew in a FLSA suit.

Broadly speaking, four considerations prompted the *Gardner-Denver* decision: (1) the paramount national interest in preventing racial discrimination in employment; (2) the investment of plenary powers in the federal courts to secure Title VII compliance; (3) the inappropriateness of the arbitral forum for determining Title VII rights; and (4) the Court's perception that relatively little interference with the federal policy favoring arbitration of labor disputes would

ensue. This balance of factors is necessarily different when a FLSA wage claim, as opposed to a racial discrimination claim, is at issue.

Although there is authority for the proposition that *Gardner-Denver* does apply to FLSA suits, *Leone v. Mobil Oil Corp.*, 173 U.S.App.D.C. 204, 209–210, 523 F.2d 1153, 1158–59 (1975), I am persuaded by the analysis of the court in *Satterwhite v. United Parcel Service, Inc.*, 496 F.2d 448 (10th Cir.), *cert. denied*, 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974), which was decided shortly after *Gardner-Denver* was handed down. *Satterwhite* held that when an employee submits a *wage claim* to binding arbitration he may not thereafter litigate the same claim in a section 16(b) FLSA action.[9] *Id.* at 452. *Accord, Atterburg v. Anchor Motor Freight, Inc.*, 425 F.Supp. 841 (D.N.J.1977). *Cf. Union de Tronquistas de Puerto Rico v. Flagship Hotel Corp.*, 554 F.2d 8 (1st Cir. 1977).

In distinguishing *Gardner-Denver*, the Tenth Circuit reasoned that FLSA wage rights do not enjoy the same "high priority" as do Title VII rights; that rate of pay issues, although statutory in origin, neither require nor lend themselves to "public law considerations;" and that Congress had manifested no preference for the resolution of wage disputes in the judicial forum. *Satterwhite, supra*, 496 F.2d at 451. Most tellingly, the court recognized that because "[w]ages and hours are at the heart of the collective-bargaining process," to allow the reassertion in court of wage claims previously resolved by binding arbitration would frustrate federal labor policy and "hinder[ ] rather than promote[ ] industrial peace . . . ." *Id.* at 451–52. Because I agree with the *Satterwhite* court that, in the wage claim context, the national policy favoring arbitration assumes greater signifi-

---

**9.** The Supreme Court has left open—and I intimate no opinion as to—the related question whether "employees may sue in court to recover overtime allegedly withheld in violation of the [FLSA], if their complaint of alleged statutory violation is also subject to resolution under grievance and arbitration provisions of a collective-bargaining agreement." *Iowa Beef*

*Packers, Inc. v. Thompson*, 405 U.S. 228, 229, 92 S.Ct. 859, 860, 31 L.Ed.2d 165 (1972) (writ of certiorari dismissed as improvidently granted). *But cf. Phillips v. Carborundum Co.*, 361 F.Supp. 1016, 1021 (W.D.N.Y.1973) (employee suit under FLSA equal pay provisions; exhaustion of grievance procedures not required).

cance than when Title VII rights are at issue, I find that *Gardner-Denver* is not controlling on the question raised herein.

## IV.

The foregoing analysis does not, however, resolve the issue before me. The *Satterwhite* and *Gardner-Denver* decisions arose out of private lawsuits instituted by employees; the instant suit is brought by the Secretary of Labor. Research by the parties and this Court has failed to unearth a single decision dealing with the question whether an arbitral award forecloses the Secretary's § 16(c) or § 17 remedies.[10] The relevant legislative history is likewise silent.[11]

Were this a § 16(c) suit, it might be urged that since the Secretary sues and recovers "on behalf of the employees," 29 U.S.C. § 216(c), they are the real parties in interest and are bound by the arbitral decision. *But see Mitchell v. Stewart Bros. Construction Co.*, 184 F.Supp. 886 (D.Neb.1960). This is, however, an injunctive proceeding under § 17. But regardless of whether suit is brought under § 16(c) or § 17, the monetary recovery, if any, inures to the employees' benefit, and the Secretary's action under either section terminates the employees' private right of action under § 16(b). Sections 16(c) and 17, therefore, seem to create overlapping remedies for the recovery of overtime compensation by the Secretary.[12]

A review of the legislative history of both sections 16 and 17 reveals that Congress was indeed concerned with securing to employees restitution of statutorily mandated wages. *Wirtz v. Harper Buffing Mach. Co.*, 280 F.Supp. 376 (D.Conn.1968); *Fleming v. Miller* (D.Minn.), 47 F.Supp. 1004, *mod. on other grounds*, 138 F.2d 629, *cert. denied*, 321 U.S. 784, 64 S.Ct. 781, 88 L.Ed. 1076. At the time § 17 was amended in 1961 (Pub.L.No. 87–30, § 12, 75 Stat. 74), the Secretary's authority to sue under § 16(c) was conditioned upon a written request by an employee. Act of Oct. 26, 1949, ch. 736, § 14, 63 Stat. 919. Private suits under § 16(b) were found to be few and "of the few that ha[d] been brought most [were] initiated by individuals no longer in the employ of the defendant employer." S.Rep.No. 145, 87th Cong., 1st Sess. 39–40 (1961), 1961 U.S.Code Cong. & Admin.News, pp. 1620, 1658–59. Because present employees were "hesitant about requesting legal action against their employers," Senate Report, *supra*, at 39, U.S.Code Cong. & Admin. News 1961, p. 1658, § 17 was amended "to establish a more effective method of enforcing an employee's rights by authorizing the Federal courts to order the payment of the actual amount of unpaid wages due an employee in injunctive actions brought under section 17." Senate Report, *supra*, at 39, U.S.Code Cong. & Admin.News 1961, p. 1658.

The Secretary argues, however, that § 17 was amended with more than the employees' private rights in mind.[13] Public rather than private enforcement of FLSA was a major Congressional goal, *Employees of*

---

**10.** The Secretary has not called this Court's attention to any instance where he has brought a FLSA suit, successfully or not, on a claim previously submitted to binding arbitration.

**11.** It is instructive to note, however, that when Congress wishes to free a federal agency from the preclusive effect of an arbitration decision, it knows *how to do so expressly. See* 29 U.S.C. § 160(a) (N.L.R.B.'s jurisdiction over unfair labor practices unaffected "by any other means of adjustment or prevention that has been or may be established by agreement, law or otherwise").

**12.** One circuit court has opined that with the 1961 amendment of § 17, Pub.L.No. 87–30, § 12, 75 Stat. 74, "the § 16(c) remedy is for all practical purposes a dead letter." *Hodgson v.*

*Wheaton Glass Co.*, 446 F.2d 527, 532 (3rd Cir. 1971).

**13.** The declaration of policy contained in § 2 of FLSA, 29 U.S.C. § 202, expresses the public-private character of FLSA rights, *Brooklyn Bank v. O'Neil*, 324 U.S. 697, 706–10, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). The Congressional aims "encompass more than simply wage relief for employees; they include broad economic considerations—improvement in commerce among the states." *Leone v. Mobil Oil Corp.*, 173 U.S.App.D.C. 204, 209, 523 F.2d 1153, 1158 (1975) (quoting *Iowa Beef Packers, Inc. v. Thompson*, 185 N.W.2d 738, 742 (Sup.Ct.Iowa 1972)).

*Dept. of Public Health and Welfare v. Missouri Public Health Dept.,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); *Hodgson v. Wheaton Glass Co., supra,* 446 F.2d at 534. The Secretary's § 17 powers were given in part to insure that a violator would be deprived of the use of unlawfully withheld compensation, *Hodgson v. Wheaton Glass Co., supra,* 446 F.2d at 535, thereby "protect[ing] complying employers from the unfair wage competition of the noncomplying employers." Senate Report, *supra,* at 40, U.S.Code Cong. & Admin.News 1961, p. 1659. *See also Wirtz v. Malthor, Inc.,* 391 F.2d 1 (9th Cir. 1968). Congress envisioned a "spreading effect" from the issuance of § 17 injunctions, Senate Report, *supra,* at 40; responsibility for monitoring FLSA compliance would shift to the enjoined employer, Senate Report, *supra,* at 40; *Hodgson v. Parke,* 324 F.Supp. 1297 (S.D.Tex. 1971), and the threat of injunction would deter would-be violators. Senate Report, *supra,* at 40. In sum, while Congress was concerned with the vindication of employees' private rights under FLSA, weighty public concerns were the primary motivation for the amendment of § 17. *Wirtz v. L. A. Swann Oil Co.,* 293 F.Supp. 211 (D.Pa. 1968). *See Wirtz v. Jones,* 340 F.2d 901, 904 (5th Cir. 1965) (the propose of § 17 "is not to collect a debt owed by an employer to his employee but to correct a continuing offense against the public interest").

■ As the foregoing review of legislative history makes clear, the Secretary in this § 17 action represents a public interest that is independent of the contractual relationship between the parties to the arbitration that preceded this suit. Indeed, that interest, at least in part, is independent of the employees' private rights under FLSA. The Secretary did not participate in the arbitration. I am compelled, therefore, to conclude that the Secretary is not bound by the prior arbitration award.[14] *See American Renaissance Lines, Inc. v. Saxis S/S Co.,* 502 F.2d 674, 677 (2d Cir. 1974) (citing *Orion Shipping & Trading Co., Inc. v. Eastern States Petro. Corp., S.A.,* 312 F.2d 299 (2d Cir.), *cert. denied,* 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963)).

V.

This Court recognizes that the foregoing disposition is seemingly at odds with the strong federal policy favoring the resolution of labor disputes through collective bargaining and its necessary concomitant— binding arbitration. *See* 29 U.S.C. §§ 173(d), 185; *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navig. Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). It does not appear that the submission to arbitration of the statutory claim under FLSA was improper, *Evans v. Hudson Coal Co.,* 165 F.2d 970 (3rd Cir. 1947); *see Wilco v. Swan,* 346 U.S. 427, 431–32, 74 S.Ct. 182, 98 L.Ed. 168 (1953); that it exceeded the provisions of the relevant collective bargaining agreement (see note 3, *supra* ); or that the arbi-

14. I reach this conclusion reluctantly because a decision upholding the defendants' contention would serve several desirable ends. Prompting the Department of Labor to participate in the arbitration of wage claims that implicate FLSA would ensure the most complete presentation of evidence to the arbitrator. Adequate representation of the public policy interests of FLSA would be assured. Adjudication would occur in the forum capable of rendering the most complete relief; the arbitrator may rule on both contractual and statutory claims while the district court must stay its hand when contractual claims subject to arbitration under a collective bargaining agreement are interposed in the judicial forum. 9 U.S.C. § 3. Final disposition of a FLSA wage claim after a single arbitration proceeding would further the avowed Congressional aim to obviate "the burden [on courts and employers] of litigating a multiplicity of suits based on the same violations of [FLSA] . . . ." Senate Report, *supra,* at 39, U.S.Code Cong. & Admin.News 1961, p. 1659. And finally, FLSA would suffer no emasculation since "manifest disregard of the law" is grounds for vacating an arbitral award. *Trafalgar Shipping Co. v. International Mill Co.,* 401 F.2d 568 (2d Cir. 1968).

trator lacked the institutional competence to decide this simple wage claim. Permitting the Secretary to litigate the very issue that was submitted to binding arbitration creates a disincentive for the employer to agree to arbitrate wage claims encompassed by FLSA. If the employee wins in arbitration his employer is bound, but if the employer wins his victory is illusory since the Secretary may seek *de novo* review in the courts. *Cf. Dewey v. Reynolds Metals Co.,* 429 F.2d 324, 332 (6th Cir. 1970). *But see Alexander v. Gardner-Denver, supra,* 415 U.S. at 54–55, 94 S.Ct. 1011, 39 L.Ed.2d 147. By the § 17 expedient, the Secretary avoids the constraints placed upon judicial review of arbitration awards. *See* United States Arbitration Act, 9 U.S.C. §§ 10, 11; *Wilco v. Swan,* 346 U.S. 427 at 434–39, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

■ It is not the province of this Court to formulate policy for the Department of Labor. But adoption by that agency of a policy of deference to arbitral awards, similar to that of the National Labor Relations Board, *see e. g., Raley's, Inc.,* 143 N.L.R.B. 256, 258–259 and *International Harvester Co.,* 138 N.L.R.B. 923, 925–26 (cited approvingly in *Carey v. Westinghouse Corp.,* 375 U.S. 261, 270–72, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964)), would go far toward encouraging arbitration as a crucial component of industrial self-government.[15]

For the reasons detailed in parts III and IV of this opinion, I conclude, albeit reluctantly, that defendants' motion for summary judgment dismissing that part of the complaint which seeks to restrain the withholding of overtime compensation, must be, and hereby is, denied.

### VI.

[6, 7] The final issue raised on this motion is whether partial summary judgment for defendants is appropriate with respect to that part of the complaint charging violations of sections 11(c) and 15(a)(5) of FLSA, 29 U.S.C. §§ 211(c), 215(a)(5), and applicable record-keeping regulations. 29 C.F.R. 516. The Secretary is seeking an injunction under § 17 restraining these violations, and of course this issue was never the subject of arbitration.

Whether the defendants are currently complying with FLSA's record-keeping requirements is clearly an issue of fact, *Goldberg v. M & K Mfg. Co.,* 230 F.Supp. 151 (D.Colo.1962); *McComb v. Aibil,* 100 F.Supp. 752 (E.D.N.Y.1951), very much in dispute between these parties. Mere *ex parte* statements by the defendants asserting FLSA compliance are insufficient to justify summary judgment. *Walling v. Reid,* 139 F.2d 323 (8th Cir. 1943). Furthermore, present FLSA compliance has been held to pose no absolute bar to the issuance of an injunction looking to the future. *Dunlop v. Davis,* 524 F.2d 1278 (5th Cir. 1975). Although the decision to grant or deny injunctive relief to prevent FLSA violations is within the discretion of this Court, *e. g., Travelers Ins. Co. v. Lawrence,* 509 F.2d 83 (6th Cir. 1974); *Wirtz v. Atlas Roofing Mfg. Co.,* 377 F.2d 112 (5th Cir. 1967), that discretion cannot be exercised until the facts are fully developed. The Court is therefore precluded from granting summary judgment on this part of the complaint. Fed.R.Civ.P. 56(c).

Defendants' motion for summary judgment dismissing the complaint is, in all respects, denied.

It is So Ordered.

---

**15.** Failing the implementation of such a policy by the Secretary, the district courts must determine, in actions brought by the Secretary following arbitral determination, what weight to give the arbitrator's award. Indeed, I must make just that determination in the case at bar.

The arbitral decision is admissible as evidence; I may accord it such weight as I deem appropriate in the circumstances. See *Gardner-Denver, supra,* 415 U.S. at 60 and n. 21, 74 S.Ct. 182.