522 F.2d 562
 90 L.R.R.M. (BNA) 2363, 78 Lab.Cas. P 11,231
 GENERAL DRIVERS AND HELPERS UNION, LOCAL NO. 554, affiliated
with the International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and Helpers of
America, Appellee,
v.
YOUNG AND HAY TRANSPORTATION COMPANY, a corporation, Appellant.
GENERAL DRIVERS AND HELPERS UNION, LOCAL NO. 554, affiliated
with the International Brotherhood of Teamsters,
Chauffeurs, Warehousemen, and Helpers of
America, AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and
Young and Hay Transportation Company, Intervenor.
 Nos. 74-1910, 75-1101.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 12, 1975.
Decided Sept. 10, 1975.
Rehearing and Rehearing En Banc Denied in No. 75-1101 Oct. 3, 1975.
 
 Roger J. Miller, Lincoln, Neb., for appellant in No. 74-1910.
 David D. Weinberg, Omaha, Neb., for appellee in No. 74-1910.
 David L. Uelmen, Milwaukee, Wis., for petitioners in No. 75-1101.
 John Elligers, Atty., N.L.R.B., Div. of Enforcement Litigation, Washington, D. C., for respondent in No. 75-1101; Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Counsel, Patrick Hardin, Associate Gen. Counsel, and John D. Burgoyne, Atty., N.L.R.B., Washington, D. C., on brief.
 Nelson, Harding, Marchetti, Leonard & Tate, Lincoln, Neb., on brief for intervenor, Young and Hay Transportation Co.
 Before HEANEY and STEPHENSON, Circuit Judges, and SMITH, Senior District Judge.*
 HEANEY, Circuit Judge.
 
 
 1
 We consolidated two appeals for purposes of this opinion. In No. 75-1101, General Drivers and Helpers Union, Local No. 554, appeals from a decision of the National Labor Relations Board dismissing a complaint alleging a violation of Section 8(a)(1) and (5) of the National Labor Relations Act, as amended, 29 U.S.C. § 158(a)(1) and (5), by the Young and Hay Transportation Company (Young) for its refusal to bargain with the Union for a single unit including its employees at Council Bluffs, Iowa, and Schuyler, Nebraska. In No. 74-1910, Young appeals from the order of the District Court enforcing an arbitration award requiring Young to comply with the terms of a collective bargaining agreement as to the employees at its Schuyler, Nebraska, terminal. We affirm the decision of the Board and the order of the District Court.
 
 
 2
 Young is a small motor carrier with its principal place of business at Worthington, Minnesota, and terminals at Schuyler, Nebraska, and Council Bluffs, Iowa. Since 1966, the Union and Young have been parties to the National Master Freight Agreement and Central States Area Local Cartage Supplemental Agreement (the Agreement) covering employees at Young's Council Bluffs terminal.
 
 
 3
 On August 17, 1972, a representation election was held at Young's Schuyler terminal by the Board and a majority of the employees voted in favor of the Union. On January 26, 1973, the Board certified the Union as bargaining agent at that terminal.[1] On November 27, 1972, the Union filed a grievance with the Nebraska Joint State Committee alleging violations of Article 2, Section 3, Paragraph 2 of the Agreement,[2] and requesting that Young be instructed to comply with the Agreement as to wages, mileage and fringe benefits for the employees at Schuyler. Young was notified that a hearing would be held on December 1, 1972. This hearing was postponed because Young failed to appear. On January 23, 1973, Young was notified that the hearing would be held on February 5 or 6, 1973. Young failed to appear on either day. The matter was nonetheless submitted to the Committee. It made the following award:
 
 
 4
 If N.L.R.B. has certified unit and the Company has signed an agreement with Local 554, the Company is instructed to comply with this agreement.
 
 
 5
 Young was notified of the decision and was informed that the Union stood ready to negotiate wage rates for the Schuyler operation.[3] Young refused to apply the provisions of the Agreement to its employees at Schuyler and the Union brought an action to enforce the arbitration award in the District Court on May 1, 1973.
 
 
 6
 On March 30 and April 9, 1973, the Union and Young held discussions covering the Schuyler and Council Bluffs operations. The Union took the position that Schuyler was covered under the Agreement as a result of the August 17, 1972, election and that under the terms of Article 2, Section 3 of the Agreement, the operations at Schuyler and Council Bluffs were to be considered as one unit for purposes of collective bargaining. Young took the position that Schuyler was not covered under the Agreement and that Council Bluffs and Schuyler were separate units for collective bargaining purposes.
 
 
 7
 The Agreement between the parties terminated June 30, 1973. During August, 1973, two of the four Union employees at Council Bluffs notified Young that they no longer desired Union representation. Young withdrew recognition of the Union as the collective bargaining agent at Council Bluffs and instituted unilateral changes in the terms and conditions of employment at both terminals.
 
 
 8
 The Union filed an unfair labor practice charge with the Board on August 22, 1973. An amended complaint issued November 26, 1973, charged Young with refusing to bargain for a single unit and with restraining and coercing its employees by the institution of unilateral changes in violation of Section 8(a) (1) and (5) of the Act, 29 U.S.C. § 158(a)(1) and (5). A hearing was held before an Administrative Law Judge on January 8, 1974. His decision of March 22, 1974, found Young in violation of the Act on both charges. Young then took exceptions from that decision to the Board.
 
 
 9
 The Board found that: (1) the Agreement applied to the Schuyler terminal as a result of the August 27, 1972, election; (2) the Agreement did not create nor did the parties intend to create subunits of all employees of an individual employer, including all "after acquired" facilities of such employer; (3) the Union, by demanding bargaining of a single unit composed of both Schuyler and Council Bluffs, was demanding bargaining in a unit differing both from the certified unit and from any unit described in or contemplated by the multi- employer contract and, therefore, Young had no duty to comply with such a request; and (4) since Young did not act unlawfully in refusing to bargain for the unit insisted upon by the Union, Young's unilateral wage increase and offer of fully paid health insurance did not constitute a violation of Section 8(a) (1) and (5) of the Act.
 
 THE APPEAL FROM THE BOARD'S DECISION
 
 10
 The Union argues that the Board erred in: (1) finding that the Union refused to bargain for the Schuyler employees alone and instead insisted on bargaining for Schuyler and Council Bluffs as a single unit; (2) overturning the Administrative Law Judge's finding that the employees at both terminals constituted a single unit for collective bargaining purposes under the terms of the Agreement; and (3) excusing the unilateral wage increases of Young because the Board found the Union had foreclosed effective negotiations.
 
 
 11
 We find the Union's grounds for appeal from the Board unpersuasive. Both the original charge filed by the Union and the amended complaint filed by the Regional Director of the Board on behalf of the Union allege that the employees at Council Bluffs and Schuyler made up the appropriate unit with which Young refused to bargain. The record further indicates that Union officials stated on more than one occasion that they sought to bargain for Schuyler only if it were combined with the Council Bluffs unit.[4] Under these circumstances, we cannot say that the Board's decision is not supported by substantial evidence on the record as a whole.
 
 
 12
 We are also unable to find any support for the Union's position that the parties intended to create a single unit by combining any later acquired facilities with existing units. We agree with the Board's statement:
 
 
 13
 * * * The General Counsel's and Charging Party's contention seems to be that, since Respondent (Young) agreed to a contract whose provisions call for automatic additions to the multiemployer unit, it was also agreeing to a kind of subunit comprised of all employees of an individual employer, including all "after acquired" facilities of such an employer. We do not agree. There was no provision in the contract describing any unit limited to Respondent's employees. In our view, whatever the effect of the provisions relating to the comprehensive multiemployer unit, they do not provide a basis for concluding that Respondent was agreeing to any subgrouping of various units of a single employer. Had such a subgrouping been intended, we believe the terms of the agreement would have specifically so provided. * * *
 
 
 14
 We also find cogent reasons for the Board excusing Young's unilateral wage increases. Section 9(a) of the Act, 29 U.S.C. § 159(a), requires an employer to bargain collectively "only to the 'terms and conditions of employment' of the employer's 'employees' in the 'unit appropriate for such purposes' that the union represents." Allied Chemical & Alkali Workers v. P.P.G. Co., 404 U.S. 157, 164, 92 S.Ct. 383, 390, 30 L.Ed.2d 341 (1971). The alteration of the bargaining unit is not a subject of mandatory bargaining. NLRB v. Wooster Div. of Borg-Warner Corp., 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958).
 
 
 15
 Although parties may voluntarily agree to merge separate bargaining units for purposes of contract negotiations so long as the resulting unit is an appropriate one, neither party may insist that negotiations must include other units and the other party is free to reject such a demand. Minnesota Mining & Mfg. Co. v. N.L.R.B., 415 F.2d 174, 176-177 (8th Cir. 1969). If one party conditions all bargaining upon an acceptance of an enlarged bargaining unit, effective and lawful negotiations are blocked and the innocent party need not negotiate as long as the bargaining is forestalled by the illegal demand. Oil, Chemical & Atomic Workers, Int. U., AFL-CIO v. N.L.R.B., 159 U.S.App.D.C. 6, 486 F.2d 1266, 1268 (1973) and Hess Oil & Chemical Co. v. N.L.R.B., 415 F.2d 440, 444 (5th Cir. 1969), Cert. denied sub nom., 397 U.S. 916, 90 S.Ct. 920, 25 L.Ed.2d 97 (1970).
 
 
 16
 Here, the Union and Young stipulated and the Board certified the bargaining unit as "all full-time and regular part-time employees of (Young) and its Schuyler, Nebraska, terminal." The evidence shows that the Union refused to negotiate for this unit alone. By conditioning all bargaining upon the coerced merger of the separate units, the Union improperly blocked negotiations at Schuyler for over four months.
 
 
 17
 We find, therefore, substantial evidence for the Board's conclusion that Young was within its rights in bypassing the obstructed bargaining and making unilateral wage increases and paid health insurance to the Schuyler employees.
 
 THE APPEAL FROM THE DISTRICT COURT
 
 18
 Young challenges the District Court's order enforcing the decision of the Nebraska Joint State Committee on three grounds. First, it argues that the Joint State Committee was without jurisdiction to resolve the contract dispute as the Agreement requires that any interpretation of the Master Agreement be done by the National Committee.[5] Second, it asserts that Schuyler employees were not covered under the Agreement after the Union became the bargaining agent for these employees unless the Schuyler unit constituted an "accretion" within the meaning of Article 2, Section 3, Paragraph 3. Third, it argues that the decision of the Committee is invalid because it does not indicate whether the Committee determined that an accretion had taken place.
 
 
 19
 In our view, the trial court acted properly in enforcing the award. While issues of arbitrability are for the courts to decide, Laundry, Dry Clean. & D. H. Wkrs. Int. U., Loc. 93 v. Mahoney, 491 F.2d 1029, 1031 (8th Cir.), Cert. denied, 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 49 (1974), questions relating to whether an otherwise arbitrable dispute should be decided at the state or national level are to be decided within the arbitration system. In this case, the State Committee decided it had the right to determine this grievance. This right was not contested by Young at either the state or national level. Indeed, Young did not appear at the state hearing. Moreover, Young did not invoke its right under the contract to submit the matter directly to the Conference Joint Area Committee and then to the National Grievance Committee.[6]
 
 
 20
 As to Young's second and third grounds for appeal, it is not within the scope of our review to pass upon the merits of a grievance a second time. Our primary function is to determine whether the arbitration committee acted within the authority granted it by the collective bargaining agreement. See United Steelworkers v. Enterprise Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). We hold that it did. Moreover, we agree with the trial court with respect to its interpretation of the Agreement. We share its view that the plain meaning of Article 2, Section 3, Paragraph 2 provides automatic coverage under the Agreement when a majority of eligible employees elect a signatory local union as their bargaining representative and their employer is a prior signator to the Agreement.[7]
 
 
 21
 There remains the issue of attorneys fees. The District Court awarded attorneys fees to the Union as it found that Young was without justification in refusing to abide by the Committee's decision and was acting contrary to the national labor policy of submitting labor disputes to final and binding arbitration. An award of attorneys fees "in a suit brought under § 301 of the Labor Management Relations Act constitutes an appropriate item of damage to be awarded by courts in the enforcement of national labor policy," United Steelworkers of Amer. v. Butler Manufacturing Co., 439 F.2d 1110, 1113 (8th Cir. 1971), and should be considered as compensatory rather than as punitive. The question of awarding attorneys fees is generally considered to be within the sound discretion of the trial court. Local U. No. 4, Int. Bro. of E. W. v. Radio Thirteen-Eighty, Inc., 469 F.2d 610 (8th Cir. 1972). We do not think the trial court abused its discretion in awarding attorneys fees to the Union in this case.
 
 
 22
 Affirmed.
 
 
 
 *
 TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation
 
 
 [1]
 The parties stipulated and the Board found that the following employees at Schuyler constituted a unit appropriate for the purpose of collective bargaining within the meaning of Section 9(b) of the NLRA, 29 U.S.C. § 159(b):
 All full-time and regular part-time employees of Young and Hay Transportation Company at its Schuyler, Nebraska, terminal including over-the-road drivers and steam cleaners but excluding office clerical employees, salesmen, professional employees, guards, and supervisors as defined in the Act.
 
 
 [2]
 Article 2, Section 3, Paragraphs 2 and 3 of the Agreement stated:
 When a majority of the eligible employees performing work covered by an Agreement designated by the National Negotiating Committee to be Supplemental to the National Master Freight Agreement (to which their Employer is a prior signator), execute a card authorizing a signatory Local Union to represent them as their collective bargaining agent at the terminal location, then, such employees shall automatically be covered by this Agreement and the applicable Supplemental Agreements. In such cases the parties may by mutual agreement negotiate wages and conditions, subject to Conference Joint Area Committee approval.
 The provisions of this Agreement shall apply to all accretions to the bargaining unit, including but not limited to, newly established or acquired terminals, and consolidations of terminals.
 
 
 [3]
 The Union was willing to negotiate an interim agreement raising the wages of the Schuyler employees to the contract level by a series of steps. However, it insisted that as a condition to beginning these negotiations, Young would have to concede that the Agreement applied to its Schuyler employees
 
 
 [4]
 The Union's reasons for insisting on considering Schuyler and Council Bluffs as one unit are not apparent from the record
 
 
 [5]
 No question is raised on this appeal as to whether the Teamster Arbitration Procedures set forth in the Agreement meet the basic standards of fairness that ought to be recognized by the courts. Several Courts have upheld them against a challenge of unfairness. Morris v. Werner-Continental, Inc., 466 F.2d 1185 (6th Cir. 1972), Cert. denied, 411 U.S. 965, 93 S.Ct. 2144, 36 L.Ed.2d 685 (1973), and Price v. International Bro. of Teamsters, Etc., 457 F.2d 605 (3rd Cir. 1972). However, we have serious reservations in this regard. See Tobias, Individual Employee Suits for Breach of the Labor Agreement and the Union's Duty of Fair Representation, 5 Tol.L.Rev. 514, 535-543 (1974) and Banyard v. N.L.R.B., 164 U.S.App.D.C. 235, 505 F.2d 342 (1974). The opportunities for discrimination against the dissident employee with a legitimate grievance or the small employer in competition with those who help control the joint panel are too real to be ignored. We will not, however, reach this issue in this case as it was not raised in the District Court or before this Court
 
 
 [6]
 Article 8(a)(1) states in part:
 Any request for interpretation of the National Master Agreement shall be submitted directly to the Conference Joint Area Committee for the making of a record on the matter, after which it shall be immediately referred to the National Grievance Committee. Such request shall be filed with both the Union and Employer Secretaries of the National Grievance Committee with a complete statement of the matter.
 
 
 [7]
 This interpretation of the Agreement was concurred in by the Board
 * * * In agreement with the Administrative Law Judge, we find that article 2, section 3, of the National Master Freight Agreement clearly requires that its terms be applied to the Schuyler location. Thus, the agreement provides for automatic coverage when a majority of employees performing work covered by the collective-bargaining agreement execute cards authorizing a signatory local union to represent them. * *