615 F.2d 1194
 103 L.R.R.M. (BNA) 2732, 24 Wage & Hour Cas. (BN 545,
88 Lab.Cas. P 11,888
 Lloyd BARRENTINE; Clyde G. Edwards; Cleo Keeney; Maxie
Blanton; Johnny Robinson; J. N. Scates; Charley
Deaton; H. E. Mittchell and L. R. Young,
Appellants,
v.
ARKANSAS-BEST FREIGHT SYSTEM, INC.; International
Brotherhood of Teamsters, Chauffeurs and
Warehousemen, Local 878, A. J.
Pickering, President, Appellees.
 No. 79-1480.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 6, 1979.
Decided Feb. 20, 1980.
 
 David C. Vladeck, Washington, D. C., argued, Arthur L. Fox, II, Washington, D. C., on brief, for appellants.
 S. Walton Maurras, Harper, Young & Smith, Fort Smith, Ark., for appellee, Best-Freight.
 Melva H. Kozinsky, Little Rock, Ark., for appellee, Teamsters.
 Before HEANEY and HENLEY, Circuit Judges, and SCHATZ, District Judge.*
 HENLEY, Circuit Judge.
 
 
 1
 This labor case is before us on appeal from a final judgment of the United States District Court for the Eastern District of Arkansas (The Honorable Richard S. Arnold, District Judge) dismissing with prejudice after a substantial bench trial a two-count complaint filed by Lloyd Barrentine, J. N. Scates, and certain other persons against their employer, or former employer, Arkansas-Best Freight System, Inc. Also joined as defendants were Local Union 878 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers and A. J. Pickering who had become president of the local union when this action was commenced in the district court in 1977.[1] For convenience, we will refer to the employer defendant as "the Company" or as "ABF"; and we will refer to the union defendant as the "Union" or as "Local 878."
 
 
 2
 ABF is a motor carrier of freight. It operates in interstate commerce under certificates of public convenience and necessity issued by the Interstate Commerce Commission as provided by what until recently was Part II of the Interstate Commerce Act, 49 U.S.C. § 301 et seq.[2] The Company is a common carrier, and in its operations it makes use of tractors and semi-trailers which at a given time may or may not be in need of repair or adjustment in order to make them safe for over-the-road operations. The Company employs persons in a number of categories of employment, including over-the-road drivers.
 
 
 3
 During the suit period, ABF and its drivers were subject to the provisions of the Interstate Commerce Act above mentioned, and also to the provisions of the Labor-Management Relations Act of 1947, 29 U.S.C. § 141 et seq., which incorporated the provisions of the original National Labor Relations Act, 29 U.S.C. § 151 et seq. ABF was also subject to relevant provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq., and as modified by § 4 of the Portal-To-Portal Pay Act of 1947, 29 U.S.C. § 254.
 
 
 4
 Additionally, under regulations promulgated by the Department of Transportation ABF's over-the-road drivers were required to make pre-trip safety inspections of the respective vehicles assigned to them. 29 C.F.R. §§ 392.7, 392.8 and 396.4 (1977).
 
 
 5
 ABF has its principal place of business in the City of Fort Smith in the Western District of Arkansas; it also operates a substantial terminal in Little Rock, which is in the Eastern District. Plaintiffs were employed at the Little Rock terminal. They were represented for collective bargaining purposes by Local 878, which is one of the local unions affiliated with the large international union that has been identified and which is generally called the "Teamsters Union."Over the relevant period of time a collective bargaining agreement was in force between members of the trucking industry, on one hand, and the Teamsters Union and its locals, including Local 878, on the other hand. ABF and other truckers operating in Arkansas, notably Strickland Transportation Co., were parties to the agreement.
 
 
 6
 Article 44 of the collective bargaining contract, hereinafter called the Agreement, set out a detailed grievance procedure with binding arbitration by a joint industry-labor grievance committee as a final step.
 
 
 7
 Under Article 50 of the Agreement, as written, the respective employers were required to pay their employees for all time worked by them in the service of the employer.
 
 
 8
 An individual employed as an over-the-road truck driver might be required to perform non-driving tasks. In such a situation he was paid at one wage rate for time actually spent in driving and at a lower rate for non-driving time.
 
 
 9
 The controversy presently to be described arose in connection with the matter of compensation for the Company's Little Rock drivers for time spent in making pre-trip safety inspections and in taking their vehicles to the Company's repair facilities if the inspections developed that the vehicles needed repair.
 
 
 10
 There were originally nine plaintiffs in the case but as to three of them the complaint was dismissed with prejudice; the case went to trial as to the remaining six, including Lloyd Barrentine and J. N. Scates, the principal complaining drivers.
 
 
 11
 Prior to the commencement of the action Barrentine and Scates submitted formal grievances; the other driver plaintiffs did not do so. The complaints of Barrentine and Scates, which were representative, went to final arbitration before the joint grievance committee referred to in Article 44 of the Agreement and were rejected.[3] The case was treated as though Barrentine and Scates had been joined in the grievance-arbitration proceedings by the other four drivers with respect to whom the case went to trial.
 
 
 12
 An ABF driver employed at Little Rock is required when reporting for duty to "punch in" on a time clock; he then performs certain preliminary functions in the office for which he is paid but not at driving time rates. After the preliminary work is completed, he "punches out" and proceeds to his assigned vehicle or "rig."
 
 
 13
 Upon locating his rig, the driver makes the required pre-trip safety inspection which consumes only a short period of time. If he finds no defects, he proceeds on his way, and in that case he is paid driving time for all time spent driving. That pay practice is not questioned here.
 
 
 14
 The problem arises when the driver discovers a defect which under the regulations must be corrected before the actual trip begins. In such a case the driver is required to drive the rig to the Company's nearby repair facility, to "punch in" again on the same or another time clock, and to remain on the premises until the defect in his vehicle is remedied. He then "punches out" and commences his trip. He is paid for the time spent between the second "punch-in" and the second "punch-out," but he is not paid for the time between the first "punch-out" and the second "punch-in." The bone of contention here is the policy of ABF not to pay for the time in question, a policy that was ultimately upheld by the joint grievance committee.
 
 
 15
 During one of the "work periods" in controversy here the driver is required to locate his vehicle, evaluate its condition from the standpoint of safety, and if he finds it defective to drive it to the repair facility. The lengths of these uncompensated periods naturally vary to some extent, but in the nature of things they are not prolonged.
 
 
 16
 Count I of the complaint is based on the Fair Labor Standards Act, and federal jurisdiction is predicated upon § 16(b) of that Act, 29 U.S.C. § 216(b). The position of plaintiffs is that the time here in controversy is recognized as compensable time by § 4(b) of the Portal-To-Portal Pay Act, supra, and that under § 16(b) of the Fair Labor Standards Act plaintiffs are entitled to double damages, to be ascertained by a proper accounting, plus costs and a reasonable attorney's fee.
 
 
 17
 Count II is based on the Labor Management Relations Act of 1947 that has been mentioned, and federal jurisdiction is predicated on § 301 of that Act, 29 U.S.C. § 185. The charge is that the Union breached its duty to represent the plaintiffs fairly in connection with their controversy with ABF. The heart of the charge is to be found in paragraphs 5 and 6 of Count II, which we set out in full.
 
 
 18
 5. The collective bargaining agreement referred to in COUNT ONE, above, and attached hereto as "Exhibit A", provides for all employees to be paid from the time the employee is ordered to report for work and register in, and ceases at the time they are effectively released from duty. Also, as alleged in COUNT ONE, above, plaintiffs have been refused any pay whatsoever by defendant ABF for the time sought by plaintiffs, and such time has been spent in ABF's service after reporting for work and first registering in. ABF has repeatedly rejected demands of plaintiffs for pay for this time. Plaintiffs, and others similarly situated, have repeatedly sought aid and assistance from the defendant Local 878 for their grievances, and have been repeatedly rejected. Plaintiffs allege defendant Local 878 has breached its duty of full and fair representation to plaintiffs by its failure to process their grievances.
 
 
 19
 6. Plaintiffs have exhausted all other remedies in that defendant Local 878 has refused them full and fair representation with their grievances, and continued and further attempts to seek such would be futile.
 
 
 20
 Prior to trial the parties entered into a rather full stipulation including a stipulation as to the issues of fact and law that the district court would be required to decide. As far as Count II of the complaint is concerned, the pertinent provisions of the stipulation are as follows:
 
 
 21
 E. Are the terms of the bargaining agreement binding upon the plaintiffs and are they estopped from proceeding under 29 U.S.C. § 185?
 
 
 22
 F. Have the defendants breached their duty of fair representation owed to the plaintiffs?
 
 
 23
 G. Would it have been futile for all plaintiffs to attempt to resolve their complaints through the grievance procedure of the collective bargaining agreement?
 
 
 24
 H. Has defendant ABF breached the collective bargaining agreement by not paying drivers for the time required to inspect their vehicle and transport it to the repair garage?
 
 
 25
 At the conclusion of the trial Judge Arnold announced his decision from the bench, and his announcement amounted to an opinion incorporating his findings of fact and conclusions of law. Materials before us include a transcript of those findings and conclusions, and we have given them careful consideration. As to the findings of fact, we are required to accept them unless clearly erroneous as that term is now commonly understood. Fed.R.Civ.P. 52(a).
 
 
 26
 The district judge found that if Article 50 of the Agreement were to be read literally, the time in controversy here would be considered as compensable time since although it was the personal responsibility of the drivers to inspect their vehicles before taking them on the road, the initial inspection of the vehicles and the taking of them to repair facility were actions taken in the interest of the employer. There can be little quarrel with that finding.
 
 
 27
 The district judge also found, however, that collective bargaining contracts are in certain respects sui generis, that provisions relative to compensable time are not always to be construed literally, and that in practice there may be room for some elasticity in determining whether a given preliminary or postliminary work activity should be considered as compensable under a given collective bargaining agreement.
 
 
 28
 Proceeding, the district court found that in industry practice Article 50 of the Agreement has not been construed literally as far as safety inspection time is concerned, and that there is some difference in construction and application between truckers. As far as the ABF Little Rock terminal is concerned, the variance from the literal wording of Article 50 has been tolerated by the Union perhaps as a result of an alleged side agreement between ABF and Odell Smith who for many years was president of Local 878.
 
 
 29
 The district court held that the controversy about the safety inspection time was properly submitted to arbitration, that the Union breached no duty of representation that it owed to its members, that the awards were legitimate ones and were not tainted by any improper side agreement between ABF and Smith, if there was such an agreement. The court also felt that the awards were binding on all six plaintiffs, and that the complaint of all of them should be dismissed, which was done.
 
 
 30
 For reversal as to Count I appellate counsel for plaintiffs insist that their claims under the Portal-To-Portal Pay Act were separate and distinct from their claims for compensation under Article 50 of the Agreement, and that the statutory claims should be considered on their merits without regard to the results of the arbitration proceedings.
 
 
 31
 As to Count II, plaintiffs complain of the awards of the joint committee on a number of grounds.
 
 
 32
 Basically, plaintiffs contend that it is unfair and contrary to federal labor policy to have individual employee grievances finally arbitrated by a grievance committee made up of representatives of both management and labor unions; that the awards made are squarely contrary to the terms of Article 50 of the Agreement; that the interpretation placed on the contract by the grievance committee is contrary to federal highway safety policy; and, finally, it is contended that the Union did not represent the grievants fairly and in good faith, and that the awards were tainted by the alleged side deal between ABF and Smith.
 
 
 33
 For affirmance, the defendants urge that some of the contentions of plaintiffs were not advanced in the district court and should not be considered on appeal for the first time. Defendants also contend that all of the complaints of plaintiffs are, in any event, without merit, and that the decisions of the arbitrators effectively disposed of the respective claims of all of the plaintiffs set out in both Count I and Count II of the complaint.
 
 I.
 
 34
 While the district court did not discuss the two counts of the complaint separately, it is not to be supposed that the court was not aware of the two counts, as such, and was not aware that one of them was based on the Portal-To-Portal Pay Act, and that the other was based on the collective bargaining agreement.
 
 
 35
 In stating his findings and conclusions the district judge made specific reference to § 203(d) of the National Labor Relations Act, 29 U.S.C. § 173(d). That section is part of Title II of the statute which deals with conciliation of labor disputes and that establishes the Federal Mediation and Conciliation Service, 29 U.S.C. § 171 et seq.
 
 
 36
 Section 203(d) provides that final adjustment "by a method agreed upon by the parties is declared to be the desirable method for settlement(s) of grievance disputes." From that provision the district court concluded that wage disputes arising under the FLSA, as amended and supplemented, may be the subject of binding arbitration where the collective bargaining agreement so provides. We agree, at least in situations in which employees knowingly and voluntarily submit their grievances to arbitration under the terms of the agreement.
 
 
 37
 Here, the parties to the Agreement are the respective trucking companies, on one hand, and the Teamsters Union and its locals on the other hand. Those parties have agreed that individual employee grievances are to be settled finally by arbitration under the procedure that we have described.
 
 
 38
 The position of the plaintiffs is that they may proceed in the federal court on the basis of their statutory claim, notwithstanding the fact that the arbitration proceedings disposed of their contract claims which are coextensive with their statutory wage claims.
 
 
 39
 Plaintiffs rely heavily on Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). Plaintiffs also cite Leone v. Mobil Oil Corp., 173 U.S.App.D.C. 204, 523 F.2d 1153 (D.C.Cir.1975), and Thompson v. Iowa Beef Packers, Inc., 185 N.W.2d 738 (Ia.1971), cert. dismissed, 405 U.S. 228, 92 S.Ct. 859, 31 L.Ed.2d 165 (1972).
 
 
 40
 Gardner-Denver was a Tenth Circuit case that arose under Title VII of the Civil Rights Act of 1964 and not under the FLSA. It was there held that a person claiming to have been the victim of racial discrimination in employment under the terms of a collective bargaining agreement calling for arbitration of grievances was not put to an election between his contract remedy and his right of action under Title VII, and that an initial resort to arbitration did not prevent him from filing suit under the statute.
 
 
 41
 The same court of appeals that decided Gardner-Denver initially also decided Satterwhite v. United Parcel Service, Inc., 496 F.2d 448 (10th Cir.), cert. denied, 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974). Satterwhite was decided shortly after the Supreme Court decided Gardner-Denver, and the court of appeals was well aware of that decision. The court of appeals distinguished a simple wage claim of an employee and an employee claim of racial discrimination prohibited by the 1964 Civil Rights Act. It was held that where an employee involved in a wage dispute voluntarily submits a grievance under the collective bargaining agreement, and where the grievance goes to final arbitration, and the employee loses, he cannot turn around and commence a suit under § 16(b) of the FLSA.
 
 
 42
 We think that the Satterwhite distinction is sound. In a context of racial discrimination the right of an employee to be free from such discrimination may well be thought to stand in more need of protection than conventional arbitration of a simple wage dispute may provide.
 
 
 43
 Satterwhite was cited with approval in Union de Tronquistas de Puerto Rico Local 901 v. Flagship Hotel Corp., 554 F.2d 8, 11 (1st Cir. 1977).[4] See also Bell v. IML Freight, Inc., 589 F.2d 502, 504 (10th Cir. 1979); Mistletoe Express Service v. Motor Expressmen's Union, 566 F.2d 692, 695 (10th Cir. 1977).
 
 
 44
 Thompson v. Iowa Beef Packers, Inc., supra, and Leone v. Mobil Oil Corp., supra, hold that where an employee has a claim under the FLSA which is also subject to arbitration under a collective bargaining agreement, he is not required to exhaust his remedies under that agreement, including final arbitration, before filing his suit under § 16(b).
 
 
 45
 Those holdings might well give us trouble here, at least with respect to the four plaintiffs who never filed grievances and never submitted their claims to arbitration except for the manner in which the case was handled in the district court.
 
 
 46
 We have mentioned the fact that the district court rejected the defense claim that the four men in question could not proceed in the case since they had not exhausted their contract remedies. In so doing, the district court stated that it was doing so on the ground that it would have been a futile gesture for the four men in question to have filed grievances and gone to arbitration in view of the action that the grievance committee had already taken in the cases of Barrentine and Scates. And the district judge stated specifically that he was "treating the case as though each of the named plaintiffs had actually filed grievances which were considered and denied."
 
 
 47
 Trial counsel for plaintiffs did not object to that approach, and appellate counsel have not undertaken in connection with this appeal to differentiate the Count I claims of Barrentine and Scates from the Count I claims of the other four plaintiffs.
 
 
 48
 We conclude, therefore, on this phase of the case that if the district court correctly disposed of the Count II claims, then Count I falls with Count II.
 
 II.
 
 49
 We consider, next, plaintiffs' claim that to uphold the award in this case would seriously offend a strong public policy of the government that the vehicles of motor carriers be safety inspected and, where necessary, be placed in a safe condition before the vehicles are put on the highways.
 
 
 50
 Assuming, contrary to the contention of the defendants, that this claim is properly before us, we find it to be without merit.
 
 
 51
 No one would deny that such a policy exists, and that it is a legitimate and a strong one. The policy, however, relates to the condition of the vehicles and does not amount to a requirement that the drivers who are required to make the inspections in advance of trips be paid for the short periods of time required to make the inspections and drive the vehicles to nearby facilities when found to be in need of repair. After all, the policy is designed for the welfare of the drivers as well as for the benefit of employers and third party members of the traveling public.
 
 III.
 
 52
 Before discussing the validity of the particular arbitration awards that were made in this case, we will take up the plaintiffs' underlying argument that it is inherently unfair and contrary to federal labor policy to submit individual employee grievances to arbitration by panels made up of representatives of management and organized labor even though an effort to achieve impartiality is made by a requirement that neither the employer nor the local union involved in the particular dispute to be submitted is to be represented on the arbitration panel.
 
 
 53
 While the defendants strongly urge that this contention is not properly before us for consideration, we will assume arguendo that it is.
 
 
 54
 A forceable argument can be made, and has been made here, that the kind of arbitration in question is subject to grave abuses, including, notably, collusive secret agreements between employers and unions as a result of which the interests of individual employee grievants may be sacrificed to arrangements that management and union labor may consider to be in their own broader interests.
 
 
 55
 This method of arbitration, which is widely used to settle individual employee grievances arising under contracts to which locals of the Teamsters Union are parties, has been criticized on account of the possibility of abuses just mentioned. See General Drivers & Helpers Union, Local No. 554 v. Young & Hay Transp. Co., 522 F.2d 562, 567, n.5 (8th Cir. 1975). See also Feller, "A General Theory of the Collective Bargaining Agreement," 61 Cal.L.Rev. 663, 836-38 (1973); Azoff, "Joint Committees As An Alternative Form of Arbitration Under The NLRA," 47 Tul.L.Rev. 325 (1973).
 
 
 56
 However, as of this time the law seems to be established that the joint committee method of arbitration is valid, and that committee awards are final and enforceable so long as the unions involved do not breach the duty of fair representation owed to union members and so long as the awards do not radically depart from the terms of the collective bargaining agreements involved. Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); General Drivers, Warehousemen & Helpers Local Union No. 89 v. Riss & Co., Inc., 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963).
 
 
 57
 In view of this state of the law plaintiffs' attack on joint committee arbitration in general must be rejected.
 
 IV.
 
 58
 Finally, there remains to be considered the claims of the plaintiffs that the Union breached its duty of fair representation, that the award flies in the face of Article 50 of the Agreement, and that the awards of the committee were tainted by a collusive side deal between ABF and former president Smith of Local 878.
 
 
 59
 In evaluating those claims we must recognize at the outset that it is not our function to substitute judicial views for those of an arbitrator as far as the merits of the controversy are concerned, Hines v. Anchor Motor Freight, Inc., supra, 424 U.S. at 562-63, 96 S.Ct. at 1055-56, and that arbitration as a method for the peaceful settlement of labor disputes arising in or affecting interstate commerce has been a favorite of the federal courts since at least 1957 when the Supreme Court decided Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). See also the familiar "Steelworkers Trilogy." United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).
 
 
 60
 As to the claim of the plaintiffs that the awards in question impermissibly violate the terms of Article 50 of the Agreement, it is sufficient for us to say that we agree with the district court that given the flexibility that must be accorded to collective bargaining agreements, the exclusion of the short periods of work activity involved in this case from compensable time under Article 50 was not such a departure from the terms of the agreement as to nullify the awards.
 
 
 61
 The questions raised by the other claims that we are now considering were primarily factual, and the district court resolved them adversely to the plaintiffs.
 
 
 62
 The district court found that during the overall period of controversy that began about 1969 there was a good deal of animosity between Barrentine, Scates and perhaps other ABF drivers and President Smith of Local 878 that extended until Smith was defeated for reelection by the defendant Pickering. While the district judge made no firm finding on the matter, he thought it probable, and he assumed that there had been a side deal of some sort between ABF, on one hand, and Mr. Smith on the other hand. The district court was unable to find that there was anything improper or collusive in the agreement, if there was one, but the court for purposes of decision appears to have assumed to a limited extent the existence of at least some degree of impropriety.
 
 
 63
 The court found, however, with respect to the presentation of the grievances to the joint grievance committee the Union had not breached any duty to its members and had not presented the grievances in a merely perfunctory or pro forma manner, and the district judge found that the awards directly involved and, indeed, earlier awards had not been tainted by any improper agreement between ABF and Smith, if there was one.
 
 
 64
 In sum, Judge Arnold found that the awards adverse to the plaintiffs were valid and were binding upon them, and that the case had to be dismissed in its entirety as to all six plaintiffs.
 
 
 65
 Counsel for plaintiffs do not challenge the factual findings of the trial court, and certainly they were not clearly erroneous. We likewise think that the trial court's conclusions of law were permissibly based on the record before it and do not represent error.
 
 
 66
 As indicated, if Count II of the complaint goes down, Count I falls with it. Accordingly, we affirm the judgment of the district court as to both counts.
 
 
 67
 HEANEY, Circuit Judge, dissenting.
 
 
 68
 I dissent from that portion of the majority opinion holding that the validity of the plaintiffs' claim under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq., depends upon the validity of their claim under the collective bargaining agreement. In my view, the Supreme Court's conclusions in Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), regarding Title VII claims apply with equal force to claims arising under FLSA; an employee's FLSA claim is not precluded by prior submission of his claim to arbitration under a collective bargaining agreement, unless the parties clearly and specifically consented to have the FLSA claim decided by the arbiters.
 
 
 69
 In this case, there was no intent to submit the FLSA claim to arbitration and it was not submitted to arbitration. Accordingly, I would remand to the district court for a determination of the validity of plaintiffs' FLSA claim.
 
 
 
 *
 The Honorable Albert G. Schatz, United States District Judge, District of Nebraska, sitting by designation
 
 
 [1]
 The litigation in the district court was commenced originally in 1973, and at that time Odell Smith was president of Local 878. That suit was dismissed without prejudice in 1976 and was duly refiled. Plaintiffs, who are truck drivers, originally sought to prosecute the case as a class action under Fed.R.Civ.P. 23. However, they never asked for a formal certification of the case as a class action, and in a pretrial order entered by the district judge on April 26, 1979 class action certification was refused; that action on the part of the district court is not in issue on this appeal
 
 
 [2]
 Part II of the Act just mentioned has now been superseded by the Revised Interstate Commerce Act that was adopted in the fall of 1978. Act of October 13, 1978, P.L. 95-473, 92 Stat. 1466 et seq. We do not understand that the 1978 revision of the statute is material as far as this case is concerned
 
 
 [3]
 The district court rejected the defense contention that the four plaintiffs, other than Barrentine and Scates, could not maintain their action because of failure to exhaust the grievance procedure called for by the collective bargaining agreement. That contention has not been renewed here
 
 
 [4]
 Our former colleague, the late Judge Van Oosterhout of Iowa, sitting in the First Circuit by designation, wrote for the court