**Edward HERNANDEZ, Ruben Estepa, et al., Plaintiffs,**

v.

**SEA–LAND SERVICE, INC., Defendant.**

**Civ. No. 84–1180 (JP).**

United States District Court, D. Puerto Rico.

May 24, 1985.

Vicente Ortiz Colon, Hato Rey, P.R., for plaintiffs.

J. Ramon Rivera Morales, Jimenez & Fuste, San Juan, P.R., for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

This action was brought by fifty-four plaintiffs under 32 L.P.R.A. 3118–3132 and the Minimum Wage Law of Puerto Rico, 29 L.P.R.A. 245–246m. Defendant petitioned for removal to this Court on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332 and § 1446.

The plaintiffs, as employees of defendant Sea-Land Service, Inc., are seeking additional compensation of not less than $100,-000.00 for accumulated sick leave under the terms of Mandatory Decree Number 38 (Sixth Revision)[1], issued by the Minimum Wage Board of the Puerto Rico Department of Labor and Human Resources. Plaintiffs claim they are owed the difference between the amount of compensation computed on the basis of an eight-hour workday, as provided in the Decree, and the amount actually paid them, which was based on a seven-hour workday. Plaintiffs are also claiming a penalty payment in an equal amount to the sum owed, pursuant to 29 L.P.R.A. 246b. In addition, plaintiffs have opposed removal, arguing that, because the dispute should be arbitrated, the state court had no jurisdiction initially and thus no derivative jurisdiction exists in the Federal court upon removal.

By Order of the Court dated May 24, 1984, the parties agreed to submit this case without any evidentiary hearing by the filing of briefs. Plaintiffs have rested on their Memorandum on the Question of Jurisdiction; defendant has submitted a Memorandum requesting that the Court accept jurisdiction and dismiss this action for failure to state a claim. We take defendant's Memorandum as a Motion to Dismiss under F.R.C.P. 12(b)(6) and, for purposes of this opinion, treat it as a Motion for Summary Judgment under F.R.C.P. 56, there having been matters outside the pleadings presented to, and not excluded by, this Court. F.R.C.P. 12(b).

### I. FINDINGS OF FACT:

The material facts required for disposition of this suit are not in dispute. These facts are set forth as follows:

1. The plaintiffs, whose names appear in Attachment A to the Complaint, were

---

1. At the present time, the Seventh Revision (1983) of Mandatory Decree No. 38 is in effect. However, the article of that decree at issue in this lawsuit, Article VIII, reads the same in both revisions.

employed by the defendant as office and professional employees under the terms of Mandatory Decree Number 38 (Sixth Revision (1974), which is applicable to the Transportation Industry.

2. Article VIII of Mandatory Decree Number 38 provides the following with respect to sick leave:

Every employee shall be entitled to sick leave with full pay at the rate of one and one twelfth (1¹⁄₁₂) (13 days per year) day for each month during which he has worked at least one hundred (100) hours. Sick leave not taken by the employee during the course of the year shall be accrued for successive years. If sick leave days accrued exceed twenty six days on November 30 of any year, the employer shall be bound to pay in cash, the period in excess of said twenty-six (26) days at the rate of eight daily hours multiplied by the regular wage rate the employee is earning at the time. Payment on the excess of twenty-six (26) days shall be made not later than the 15th of the following month. Except in cases of acts of God, the employee must notify his employer of his sickness the same day he is absent. In case of sickness lasting over two (2) days, the employees must accredit the same with a medical certificate in order to be entitled to enjoy the leave provided herein. The compensation corresponding to sick leave shall be paid during the week in which the absence occurs. The compensation corresponding to sick leave shall be computed multiplying by eight (8) hours the average regular hourly wage the employee is earning during the time of his illness. In case the employees ceases in work, the employer shall pay him the total thus far accumulated in excess of 26 days.

3. The plaintiffs, being numbers of a collective bargaining unit and represented by the Office of Professional Employees International Union (OPEIU), were employed by defendant under the terms and conditions of an applicable collective bargaining agreement.[2]

4. Article VII(2) of the applicable collective bargaining agreement provides in pertinent part as follows:

"Employees shall be entitled to one day of paid sick leave for each month of employment or major fraction thereof. However, employees may not use their sick leave during the sixty (60) working-day probationary period. During the third month of employment an employee will have accumulated to his or her credit three (3) days of sick leave and will continue to accumulate sick leave at the rate of one day per month with a maximum accumulation of one hundred (100) days."

5. Notwithstanding Article VII(2) quoted in FINDING No. 4 above, defendant Sea-Land Service has provided sick leave benefits to plaintiffs at the rate of thirteen days per year, as required by Mandatory Decree Number 38.

6. In April 1978, defendant Sea-Land Service liquidated the accrued sick leave of plaintiffs in excess of 26 days on the basis of a seven-hour work-day.

7. The working day of plaintiffs, as provided in the collective bargaining agreement (Article IV(1)), consists of seven hours per day.

8. Article XV of the collective bargaining agreement contains an arbitration clause which provides for the submission to final and binding arbitration of any "grievance" as defined therein which is not settled under the grievance procedure outlined therein. (XV, 3–4) "Grievance" is defined as "any complaint or dispute arising between the parties to this Agreement involving the interpretation, application, or claimed breach of this Agreement." (XV, 1).

---

**2.** Although the collective bargaining agreement submitted to the Court is dated December 13, 1978 and plaintiffs are claiming compensation for an act of the employer in April 1978, both parties directly refer to the December 1978 agreement in their briefs. The Court thus accepts said agreement as having been stipulated by the parties. *See also* Order of May 24, 1984 at Part I, 5.

9. The Union representing plaintiffs filed a charge against Sea-Land Service, Inc. before the Labor Relations Board of Puerto Rico on January 20, 1984. The charge alleged failure by the employer to submit to arbitration the dispute relating to the interpretation and application of Mandatory Decree Number 38, Art. VIII to cases of employees' sick leave. In a notice filed July 20, 1984, the charge was dismissed by the Board as a matter for the courts to decide because the allegations of the charge failed to establish a violation of the collective bargaining agreement.

## II. CONCLUSIONS OF LAW:

A. *Whether this Court has jurisdiction:*

Plaintiffs claim this Court has jurisdiction of this removal action because the state court had no jurisdiction. They contend that, because the employer refused to submit the controversy to arbitration, they had "no other recourse but to file [an action in state court] despite their earnest doubts about the jurisdiction of the courts of law to entertain this matter." Plaintiffs' Response to Supplemental Memorandum of Law by Defendant, filed August 6, 1984, at 1–2.

Plaintiffs' argument is wholly without merit. Plaintiff initiated suit in the Superior Court of Puerto Rico in April 1984, while their charge to compel arbitration was still pending before the Labor Relations Board. Furthermore, plaintiffs brought a *statutory* cause of action in state court under 32 L.P.R.A. 3118–3132, 29 L.P.R.A. 246b and Mandatory Decree Number 38. There is no mention in plaintiffs' complaint of the employer's refusal to arbitrate, nor do plaintiffs request the Court to determine the arbitrability of the dispute and compel the employer to arbitrate. Plaintiffs' prayer is for monetary compensation alone, including attorneys' fees.

■ Plaintiffs raise the question of arbitrability for the first time in their Motion to Oppose Removal. Even if this Court accepted plaintiffs' belated request for arbitration as an amendment to their complaint, the question of arbitrability does not affect the jurisdiction of a court. *E.g., Int'l Union of Operating Engineers, Local 150, AFL–CIO v. Flair Builders, Inc.,* 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972); *Pérez v. Water Resources Authority,* 87 P.R.R. 110 (1963). If it did, no court—state or federal—would be empowered to determine whether a dispute were arbitrable, and to issue an order compelling arbitration.

■ Plaintiffs have not challenged the existence of diversity of citizenship as a basis for jurisdiction in this case. Defendant alleges to be a Delaware corporation with its principal place of business in New Jersey and claims plaintiffs are citizens and residents of Puerto Rico. Rather than contesting these allegations, plaintiffs have argued that a removal based on diversity jurisdiction is derivative and no jurisdiction existed in state court for the reasons stated above. Furthermore, the plaintiffs have claimed at least $100,000.00 in relief. Accordingly, the Court finds the requirements of 28 U.S.C. 1332 to be satisfied and assumes jurisdiction based on diversity.

B. *Whether the present dispute is subject to arbitration* :

■ By Order of May 24, 1984, the parties submitted to this Court the issue of whether the Court should order the case to be arbitrated. For the determination of this issue, we must apply Federal law, regardless of whether we sit in removal directly adjudicating a federal question under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, or whether we sit in diversity finding that Federal law completely preempts this area of labor law. *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 2853–54, 77 L.Ed.2d 420 (1983), *explaining Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n. of Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), *cited in Hernández Agosto v. Romero-Barceló,* 748 F.2d 1, 3 (1st Cir.1984).

Plaintiffs' request in this case is for the arbitration of a dispute concerning the in-

terpretation and application of a Mandatory Decree regarding liquidation of accrued sick leave in excess of 26 days. Plaintiffs have pointed to the arbitration clause of the collective bargaining agreement to support their claim that the parties agreed to submit all controversies, of any subject matter, to arbitration. Defendant argues that, since the arbitration clause provides only for arbitration of controversies involving the interpretation, application or claimed breach of the agreement, there is nothing to arbitrate here because the dispute is a purely legal one, involving the interpretation and application of a Mandatory Decree.

■ The role of the arbitrator is of unquestionable import in the resolution of contractual disputes and the prevention of industrial strife. Where the arbitration clause provides, as here, for submission of all questions of contract interpretation to the arbitrator, the function of the court is limited to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

The Agreement in this case contains no provision regarding liquidation of sick leave. Article VII alone deals with sick leave. The only provision of said Article which deals with accumulation of sick leave is quoted in Part I, 4 *supra.* Although this provision states the rate of accumulation of sick leave, the parties have agreed that, for purposes of the claims in this suit, the defendant has computed accrual in accord with Mandatory Decree Number 38; no issue of fact or law as to this provision has been raised by the plaintiffs. Indeed, the parties have raised no factual issues as to the number of days or the wage rate to compute each plaintiff's liquidation.

■ In sum, we find that the arbitration clause is not susceptible of an interpretation that covers this dispute. *United Steel-*

*workers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). The Agreement shows no evidence that arbitration regarding liquidation of sick leave was included in the parties' promise to arbitrate all matters involving interpretation, application or breach of the Agreement. If no such promise was made, no violation of the Agreement can exist. The Labor Relations Board of Puerto Rico reached this same conclusion in its Notice of Dismissal of charge, when it stated: "The investigation demonstrates ... that the allegations of the charge do not establish a violation of the collective bargaining agreement, but instead an interpretation and application of a Mandatory Decree, whose adjudication corresponds to the courts to decide ..." Notice of Dismissal of Charge, CA–7169, (Labor Relations Board of Puerto Rico, July 20, 1984).

■ We thus can find no basis or function for arbitration of this dispute. The sole issue here is one as to the intent of the Minimum Wage Board in its Decree providing for computation of liquidation on the basis of eight hours. An arbitrator has authority to resolve only questions of contractual rights;[3] an arbitral decision based "solely upon the arbitrator's view of the requirements of enacted legislation" has "exceeded the scope of the submission." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 53–54, 94 S.Ct. 1011, 1022–23, 39 L.Ed.2d 147 (1974), *quoting United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Although an arbitrator may be competent to resolve many preliminary factual questions, he may not be competent to decide ultimate legal issues because his expertise "pertains primarily to the law of the shop, not the law of the land." *Gardner-Denver*, 415 U.S. at 57, 94 S.Ct. at 1024, *quoted in McDonald v. West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984).

---

**3.** *Cf. Beauchamp v. Dorado Beach Hotel*, 98 P.R.R. 622 (1970) (once the determinative factual issues are decided by the arbitrator, the nec-

essary consequences prescribed by law may be awarded by the arbitrator).

*See also Pagán Rodríguez v. Fundación Hospital,* 83 JTS 47, 50 (P.R.1983) (function of the arbitrator is to resolve factual disputes, not those provided for by law).

In a case arising from very similar facts,[4] the First Circuit held that judicial review of the merits of an arbitration award was inappropriate insofar as the arbitrator's decision rested on a construction of the collective bargaining agreement. *Union de Tronquistas L. 901 v. Flagship Hotel Corp.,* 554 F.2d 8 (1st Cir.1977). The Court effectively left open, however, the scope for judicial review of the arbitrator's interpretation of the mandatory decree in that case, since the underlying issue there was one of law.[5] Although the pre-arbitration posture of the parties before us differs from the situation where parties have already submitted to arbitration and the Court is asked to set aside the award, we believe the dispositive legal issue of arbitrability of statutory claims—whether Federal or state—is common to both situations. *See Barrentine,* 450 U.S. 728, at 731, n. 4, 101 S.Ct. 1437, at 1440 n. 4, 67 L.Ed.2d 641 (1981). Because we have found the plaintiffs' claim to be outside the scope of the arbitration clause, we find it unnecessary to determine whether Mandatory Decree No. 38, a creature of state law,[6] should be entitled to the same kind of accommodation as the Federal statutes which have been held to provide a separate right of action to an aggrieved employee against an employer, even though the employee had submitted a grievance based on the same facts to arbitration. *Gardner-Denver, supra,* (42 U.S.C. § 2000e *et seq.*); *Barrentine, supra,* (29 U.S.C. § 201 *et seq.*); *McDonald, supra,* (42 U.S.C. § 1983). *Cf. Union de Tronquistas,* 554 F.2d at 10–11.

**C.** *Whether plaintiff's claims for Unpaid Wages and Statutory Penalty succeed on the merits:*

We now turn to the state claim at issue, deciding on the merits under Commonwealth Law as a court sitting in diversity. Because the Mandatory Decree at issue here is of a "quasi-legislative" character which holds the force of law, *see* note 6 *supra,* Puerto Rico law mandates that the rules of interpretation applicable to statutes be used to determine its meaning. *Secretary of Labor v. Puerto Rico Cereal Extracts,* 83 P.R.R. 259, 262 n. 2 (1961). In addition, mandatory decrees must be construed in harmony with the provisions of the statute authorizing their promulgation, in this case 29 L.P.R.A. 245–246m. *Lugo v. Marini,* 72 P.R.R. 483, 486 (1951). In determining what the Minimum Wage Board meant by the provision requiring computation of liquidated sick leave on the basis of eight hours, we turn to the guideposts for finding drafters' intent: legislative history, canons of construction, and administrative interpretation.

In the most recent amendment of the Minimum Wage Act, the Legislature of Puerto Rico reaffirmed its original intent that "one of the fundamental objectives of [the Minimum Wage] Board is the welfare of the workers without hampering the economic development of Puerto Rico by fixing fair and reasonable wages[.]" Statement of Motives, Minimum Wage Act, General Amendment, Act No. 114, July 17, 1979, 1979 Laws of Puerto Rico 266. Authorized in this manner, the Board promulgated Decree No. 38 requiring compensation for certain number of days spent in absence due to sickness. The purpose of this provision was to "bring a certain pro-

---

**4.** The critical distinction between *Tronquistas* and the instant case consists of the inclusion in the *Tronquistas* collective bargaining agreement of a provision directly relating to the issue before the arbitrator and the court.

**5.** The conclusion as to this issue in *Union de Tronquistas* rested on a rationale which has been effectively overruled by *Barrentine v. Arkansas-Best Freight System,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). *See also*

*McDonald,* 466 U.S. 284, 104 S.Ct. 1799, *supra.* The First Circuit has not spoken on this issue since *Barrentine,* and we treat it as an issue reopened for its consideration.

**6.** Mandatory Decrees of the Minimum Wage Board implement the Minimum Wage Law, 29 L.P.R.A. 245–246m, and have the force of law. *Mendoza v. Minimum Wage Board,* 74 P.R.R. 695, 702 (1953). *See also* 29 L.P.R.A. § 245(g).

tection to the employee and his family in case of sickness." Report, Conclusion of Fact and Draft of Proposed Decree submitted to the Minimum Wage Board by the Minimum Salary Committee for the Transportation Industry," 30 January 1975, Traslation at 18–19. The purpose of the additional provision requiring liquidation of accrued sick leave in excess of 26 days was to "stimulate the worker to be absent as little as possible from work lowering the problem of absenteeism in the industries in Puerto Rico." *Id.* at 19. In keeping with the legislature's intent, the Committee concluded that "the economic capacity of the industry permits it to absorb the effect which this recommendation will have." *Id.* at 18.

■ We are aware that the literal words of the Decree require the employer to liquidate "the period in excess of said twenty-six (26) days at the rate of eight daily hours multiplied by regular wage rate the employee is earning at the time." Finding of Fact 2, *supra.* However, if the strict meaning of the words defeats the manifest legislative intent in enactment of a statute, the intent should prevail. *Puerto Rico Cereal Extracts,* 83 P.R.R. at 267–68. We see no evidence in the intent expressed by the legislature or the Board to give an absent worker more pay for days not worked than for those worked, the result which would ensue were plaintiffs' interpretation of the Decree to prevail. The more reasonable interpretation of the provision is that the Board used an eight-hour standard in light of the eight-hour workday established as the legal workday, 29 L.P. R.A. 271, for such purposes as computing overtime hours. The rather inartful drafting would reasonably be intended to prevent an employee whose workday consists of eight hours from receiving reduced pay of less than eight hours for those days of sick leave accrued in excess of 26 days.

A similar conclusion was reached by the Solicitor of Labor in an Advisory Opinion on the question of whether janitors who worked five, six or seven hour days should be given sick leave and vacation pay based

on an eight-hour workday, as literally required by Mandatory Decree No. 89, the decree at issue there. The Solicitor concluded that the compensation to be paid should be "made on the basis of the hours which constitute the daily work-day of the employee, even though those are less than eight (8)." Advisory Opinion No. 10696 issued by Solicitor of Labor of Puerto Rico, 13 July 1979, Translation.

We can find no other reasonable conclusion for the issue before us. The legislature and the Board have taken care to balance the welfare of workers against the needs of the industry. To subject the industry to an arbitrary and unpredictable burden in order to provide employees with a windfall requires an express legislative intent. The legislature of Puerto Rico is well capable of expressing clearly its intent to provide a bonus when it so chooses. *See, e.g.* 29 L.P.R.A. 501–507 (Christmas Bonus Law). It has not done so with the Minimum Wage laws.

The Minimum Wage Law of Puerto Rico is for the humanitarian protection, not the unjust enrichment of workers. The legal provision of payment for sick leave to employees creates an insurance to secure an income in the event an employee becomes ill. It does not vary the ethical concept that people are paid to work. The employees who take sick leave as a matter of course in the absence of incapacitating illness are committing a fraud and affecting adversely the efficiency of the Puerto Rican work force in general. The legislature of Puerto Rico has assumed that the work ethics of local employees are so poor that they require a bonus as well as ordinary compensation to perform their duties as employees; without such incentive many employees will take sick leave in the absence of incapacitating illness.

We believe that these laws adversely affect the work ethics of employees and consequently lower the efficiency of the Puerto Rican work force to the detriment of the community. The right approach is to create a conscience in the people which would make abhorrent the kind of conduct where

an employee accepts sick leave when as a matter of fact he has not suffered any incapacitating illness.

Summary Judgment is hereby GRANTED for the defendant as to plaintiffs' claims for additional compensation and payment of a statutory penalty.[7]

The Clerk shall enter Judgment accordingly.

SO ORDERED.

---

**7.** There is no need to address plaintiffs' claim pursuant to 29 L.P.R.A. 246(b), the Court having decided against plaintiffs' underlying claim for unpaid compensation.